Russell DOMIANO, Plaintiff–Appellant,

v.

The VILLAGE OF RIVER GROVE, a Municipal Corporation, and Thomas Tarpey, Individually and as President of the Village of River Grove, Defendants–Appellees.

No. 89–2084.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 12, 1989.

Decided June 8, 1990.

---

Raymond J. Prosser, Chicago, Ill., for plaintiff-appellant.

Harry J. Smith, Jr., River Grove, Ill., for defendants-appellees.

Before WOOD, Jr., CUDAHY and KANNE, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

The plaintiff-appellant, Russell Domiano, appeals from a summary judgment entered by the district court in favor of the defendants Thomas Tarpey and the Village of River Grove ("Village"). Plaintiff claimed that the defendants violated his first amendment rights when they discharged him from his post as fire chief after he criticized a recently enacted ordinance. Plaintiff also asserted that the defendants deprived him of his property without due process of law when they discharged him from his job without notice and a hearing prior to his dismissal.

## I. BACKGROUND

Domiano was a River Grove volunteer fireman for approximately eighteen years.

He served as chief of the department from May 1986 to April 12, 1988. Since his dismissal, Domiano has resumed his prior status as a volunteer fireman. Domiano's salary during his final year as a fire chief was $5,000; volunteer firemen are only paid when they go out on a call. The final year of Domiano's tenure as fire chief was to expire on April 30, 1988.

At their meeting on April 7, 1988, the Village board of trustees passed two ordinances that affected the fire department. Ordinance number 1988–6 repealed an existing ordinance limiting the department's transport of patients to certain local hospitals. The repealed ordinance required that in cases of medical emergency, fire department personnel were to transfer patients to the nearest hospital; in nonemergency situations, patients could be taken to the hospital of their choice. The repeal effectively required the fire department to return to its previous practice of allowing patients to designate a particular hospital to which they wished to be transported. The second ordinance that the Village board adopted, ordinance number 1988–4, amended the procedure for the fire chief's appointment by providing that the Village president rather than fire department members would appoint the fire chief.

When he learned of the new ordinances, Domiano allegedly called Pat Paldo, chairman of the fire and police committee of the Village board, to express his concern that transporting patients to outlying hospitals could result in manpower shortages in the event of a second emergency and would also expose the Village to additional liability. Domiano informed Paldo that he would not comply with the new policy expressed by the Village board's repeal of the ordinance concerning the transportation of patients. Domiano also told Paldo that he would advise other members of the fire department not to comply with the new policy until Paldo discussed the hazards posed by the new ordinance with Village president Tarpey. Paldo agreed to convey Domiano's concerns to Village president

Thomas Tarpey the following day. Domiano also expressed his displeasure with the ordinance to a reporter for the River Grove Messenger.

On April 12, 1988, Tarpey telephoned Domiano to discuss Domiano's reaction to the patient transportation ordinance. Domiano advised Tarpey that he regarded the ordinance as "ridiculous" and that he would not enforce it. Domiano also conceded to Tarpey that he had expressed his opinion and concerns to a newspaper reporter, two department members, and the department officers. Tarpey informed Domiano that he was relieved of his duties as fire chief because of his refusal to obey the new ordinance. Domiano thereafter received a certified letter from Tarpey dated April 12, 1988, that notified him that he was relieved of his duties as fire chief "because of his insubordination relative to the repeal of the transportation ordinance." [1] The Village never formally charged Domiano nor did it provide him with a formal hearing prior to his discharge. Domiano continues to be employed by the fire department as a part-time volunteer fire fighter.

On April 18, 1988, Domiano filed a two-count complaint against the Village and Tarpey, both individually and in his capacity as Village president. The first count of the complaint alleged that the defendants violated 42 U.S.C. § 1983 by discharging Domiano in retaliation for exercising his right to free speech as guaranteed by the first amendment of the United States Constitution and Article 1, section 1, of the Illinois Constitution. The second count asserted that the defendants' discharge of plaintiff prior to the expiration of his term on April 30, 1988, violated his due process rights under the fourteenth amendment to a pretermination hearing. Domiano asserted that he was deprived of property and liberty interests as a result of his termination. While the district court found that the defendants did not deprive Domiano of either a property or a liberty interest, Domiano only argues on appeal that the trial

---

1. Despite Tarpey's unilateral role in Domiano's discharge, the Village ordinances neither vest the Village president with the authority to fire Village employees nor describe the procedure for the discharge of the fire chief.

court erred in its finding that he was not deprived of a property interest or his right to free speech.

We review the district court's decision to grant summary judgment de novo and use the same standard of decisionmaking as that employed by the district court. *McMillian v. Svetanoff*, 878 F.2d 186, 188 (7th Cir.1989). Thus, we will only affirm the grant of summary judgment when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c).

## II. FIRST AMENDMENT CLAIM

■ Government employees do not relinquish their first amendment right to freedom of speech as a condition of public employment. *Connick v. Myers*, 461 U.S. 138, 140, 103 S.Ct. 1684, 1686, 75 L.Ed.2d 708 (1983); *Pickering v. Board of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968). The first amendment, however, is not a license for insubordinate speech that impedes an employee's performance of his duties or that interferes with the proper functioning of the workplace. In analyzing cases concerning a public employee's first amendment rights, we must first determine whether plaintiff's speech was a matter of public concern. *Connick*, 461 U.S. at 146, 103 S.Ct. at 1689. Defendants do not dispute the district court's finding that Domiano's speech addressed a matter of public concern.

■ Because Domiano's speech indisputably involved a matter of public concern, we must apply the *Pickering* balancing test to determine whether the defendants could justifiably retaliate against Domiano for his remarks. *Pickering* requires us to weigh Domiano's right to comment on matters of public concern against the Village's right, as an employer, to promote the efficiency of its public services. *Pickering*, 391 U.S. at 568, 88 S.Ct. at 1734; *Gray v. Lacke*, 885 F.2d 399, 410 (7th Cir.1989); *Conner v. Reinhard*, 847 F.2d 384, 389 (7th Cir.1988). The *Pickering* Court identified four factors integral to the balancing process: (1) whether the speech impeded the

employee's ability to perform his responsibilities; (2) the importance of close working relationships with superiors and co-workers; (3) the time, place, and manner in which the speech was delivered; and (4) the context in which the underlying dispute arose. *Pickering*, 391 U.S. at 150–54, 88 S.Ct. at 1691–93. When considering Domiano's remarks in the *Pickering* calculus, we are obliged to "look at the ordinary or foreseeable effect of the conduct in controversy and to determine whether it would be 'reasonably calculated to create division or to have impaired discipline.'" *Patkus v. Sangamon–Cass Consortium*, 769 F.2d 1251, 1258 (7th Cir.1985) (quoting *Yoggerst v. Stewart*, 623 F.2d 35, 40 (7th Cir.1980)).

■ The defendants allege and the district court found that Domiano's statements were divisive and insubordinate acts, even though his speech concerned an important matter of public concern. The statements at issue were Domiano's remark that ordinance number 1988–6, which repealed the transportation ordinance, was "ridiculous;" his statement to Tarpey that he would not comply with the repealing ordinance; and Domiano's advice to other fire department personnel that they should ignore the policy expressed by the repealing ordinance. Tarpey testified at his deposition and by affidavit that he discharged Domiano only after Domiano stated that he would not follow the new policy implicit in the repealing ordinance.

Assistant fire chief Allan Utter executed an affidavit that stated that Domiano advised certain members of the department to ignore the repealing ordinance. Utter testified that he construed Domiano's statements as the equivalent of an order. Lieutenant Leder, who was in charge of the fire department's day crew, also testified by affidavit that Domiano ordered him not to follow the transportation policy expressed by the new ordinance. Plaintiff alleges that his deposition testimony, in which he denied that he gave a direct order to the department members to ignore the repealing ordinance, created a disputed issue of material fact regarding the disruptive nature of his speech. Domiano's deposition

testimony, however, was ambiguous on the issue of precisely what he told Tarpey and the fire department members. Domiano stated that he "expressed his feelings on the ordinance," which "in a word" was that the ordinance was "ridiculous." Domiano never answered defense counsel's query as to whether he told the members or Tarpey that he would not comply with the ordinance. When defense counsel inquired into whether Domiano told Tarpey that he would not comply with the ordinance, Domiano responded as follows:

MR. SMITH: Did you tell him that you were not going to comply with the new policy?

[MR. DOMIANO]: I probably mentioned to him because of the way I felt about it and the liability involved that—I told him —no, I did not tell him I was not going to comply, because he relieved me of duty, so it would do no good.

\* \* \* \* \* \*

[MR. SMITH]: It is your statement, then, that you and [Tarpey] never discussed the enforcement of the new policy?

[MR. DOMIANO]: You know, I felt—I probably said, you know, that I advised, you know, certain memberships, certain people, cause I have never called a collective meeting about the ordinance.

[MR. SMITH]: You did tell him that?

[MR. DOMIANO]: Possibly. I don't know exactly if I did tell him that.

Domiano's ambiguous answers to pertinent questions concerning whether he stated that he would refuse to follow the new policy and whether he advised department members to similarly ignore the new policy are not sufficient to create a material question of fact regarding his conduct.

There is no evidence that Domiano's direct refusal to comply with the new patient transportation policy reflected by the repeal of the existing transportation ordinance impeded him from performing his other responsibilities as fire chief. Nonetheless, by elevating his individual philosophy regarding patient transportation, however well-founded, above the policy reflected by the repealing ordinance enacted by the elected representatives of the citizens of River Grove, Domiano undermined department discipline and harmony and ignored the directive of River Grove's policy makers. The testimony of Utter and Leder, Domiano's subordinates, evidenced the inevitable divisiveness engendered by Domiano's declaration that he would ignore the Village's new policy. Utter testified that the fire department staff felt that they were "in the middle" and were uncertain whether to follow the new Village policy or that espoused by Domiano. Domiano presented no evidence disputing the reasonable inference that a fire chief's refusal to follow an ordinance regulating the fire department would arouse an insurrectionary and divisive spirit among department members toward an unpopular Village ordinance. The defendants were not obliged to wait until Domiano persuaded all fire department members to similarly rebel before discharging him for insubordination. The defendants were entitled to expect Village employees to adhere to ordinances regulating the functioning of their departments. Domiano's concern for the safe transport of patients was commendable and his disagreement with the ordinance was certainly protected speech; his adamant refusal to follow the ordinance, however, was insubordination justifying dismissal.

In *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), a majority of the Supreme Court found that a questionnaire distributed by an assistant district attorney to her co-workers was merely an insubordinate attempt to publicly declaim her dissatisfaction with her employer's decisionmaking. The Court held that the first amendment did not require Connick, the assistant district attorney's employer, to tolerate action that he "reasonably believed would disrupt the office, undermine his authority, and destroy close working relationships." *Id.* at 154, 103 S.Ct. at 1694. Justice Brennan, who would have precluded the firing, observed in his dissent that

Perhaps the simplest example of a statement by a public employee that would not be protected by the First

Amendment would be answering "No" to a request that the employee perform a lawful task within the scope of his duties. Although such a refusal is "speech," which implicates First Amendment interests, it is also insubordination, and as such it may serve as the basis for a lawful dismissal.

*Id.* at 163 n. 3, 103 S.Ct. at 1699 n. 3 (Brennan, J., dissenting). Domiano's refusal to abide by a validly enacted Village ordinance pertaining to patient transportation and his advice to his subordinates also to ignore the policy provided a lawful reason for his dismissal. An employer is not obliged to "allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action." *Id.* at 152, 103 S.Ct. at 1692 (footnote omitted). The district court was correct in holding that the defendants did not violate Domiano's first amendment right to freedom of speech when they discharged him for insubordination.

## III. DUE PROCESS CLAIM

Finally, Domiano claims that his discharge constituted a violation of due process because it occurred without any notice of formal charges or a pretermination hearing. The district court, however, held that Domiano had no property right in his job as the Village's fire chief and therefore was not entitled to notice or a hearing.

A claim of entitlement must be more than an "abstract need or desire" or a mere unilateral expectation of continued employment; it must be a claim "upon which people rely in their daily lives." *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Property interests are not created by the Constitution; rather, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.; see also Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985); *Paul v. Davis,* 424 U.S. 693, 709, 96 S.Ct. 1155, 1164, 47 L.Ed.2d 405 (1976). Thus, "[p]roperty interests in employment may be created by express or implied contracts, municipal ordinances or state laws—including those 'rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" *Farmer v. Lane,* 864 F.2d 473, 478 (7th Cir.1988) (quoting *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709).

■ Before the district court and on appeal, plaintiff asserted that he had a property interest in his employment by virtue of chapter 2 of the ordinances of River Grove, which provide in part:

2-2-1: DEPARTMENT ESTABLISHED: A Fire Department is hereby established which shall consist of such number of volunteer personnel as may, from time to time, be appointed thereto by the President by and with the consent of the Board of Trustees. *All members shall continue as such for a term to be fixed at the time of their appointment. If no other term is then fixed, until the end of the current fiscal year, for initial appointments and for one year for reappointments.*

2-2-2: OFFICERS: All operational officers of the Department shall be elected by and from the membership annually, during the month of May.

RIVER GROVE, ILL., ORDINANCES ch. 2, §§ 2-1, 2-2 (emphasis added). The district court found that the Village ordinances did not support Domiano's claim of entitlement to continued employment until the end of his term. While Illinois public employees have no presumptive property interest in their positions, *Levin v. Civil Serv. Comm'n of Cook County,* 52 Ill.2d 516, 521, 288 N.E.2d 97, 100 (1972); *Jordan v. Metropolitan Sanitary Dist.,* 15 Ill.2d 369, 382, 15 Ill.2d 369, 155 N.E.2d 297 (1958), the Illinois Supreme Court in *Levin* noted that "[i]n the *absence* of a fixed term of office created by the constitution or by statute, the public employee holds his position at the pleasure of the appointing power and he may be removed at any time."

*Levin,* 52 Ill.2d at 521, 288 N.E.2d at 100 (emphasis added). Village ordinance 2–2–1 fixed a one year term for Domiano to serve as fire chief. A village ordinance, like a state statute or constitutional provision, may create a protectable property interest in employment. *Thornton v. Barnes,* 890 F.2d 1380, 1386 (7th Cir.1989); *Farmer,* 864 F.2d at 478. Because Domiano's final term as fire chief was a reappointment, under Village ordinance 2–2–1 Domiano had a property interest in his employment from May 1, 1987, to April 30, 1988.

■ Having found that Domiano was deprived of a protected property interest that was entitled to due process procedural safeguards, we must determine whether he received all of the process he was due. The due process clause requires that prior to the termination of a public employee with a property interest in his employment, the employer must give oral or written notice of the charges against the employee, explain the evidence against the employee, and give the employee an opportunity to present his side of the story to the employer. In assessing the specific dictates of due process, we must balance the competing interests of the government in terminating an unsatisfactory employee and the employee in retaining his property right in his job. *Loudermill,* 470 U.S. at 546, 105 S.Ct. at 1495; *Mathews v. Eldridge,* 424 U.S. 319, 334–35, 96 S.Ct. 893, 902–03, 47 L.Ed.2d 18 (1976).

In *Mathews,* the Supreme Court stated that a court's balancing of the employer and employee's competing interests requires consideration of three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335, 96 S.Ct. at 903. The Court has frequently noted that the significance of the employee's interest in retaining employment cannot be underestimated. *See Loudermill,* 470 U.S. at 543, 105 S.Ct. at 1494; *Fusari v. Steinberg,* 419 U.S. 379, 389, 95 S.Ct. 533, 539, 42 L.Ed.2d 521 (1975); *Bell v. Burson,* 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90 (1971); *Goldberg v. Kelly,* 397 U.S. 254, 264, 90 S.Ct. 1011, 1018, 25 L.Ed.2d 287 (1970); *Sniadach v. Family Fin. Corp.,* 395 U.S. 337, 340, 89 S.Ct. 1820, 1822, 23 L.Ed.2d 349 (1969). Even if the employee lands another job, the search for employment consumes time and effort and is hindered by the questionable circumstances surrounding the employee's departure from his prior employment. *See Loudermill,* 470 U.S. at 543, 105 S.Ct. at 1494.

Despite the apparent lack of factual controversy regarding Domiano's position on the disputed ordinance, the appropriateness or necessity of the discharge was not fully demonstrated by the "hearing" that defendants now allege Domiano received during his phone call with Tarpey. *See Loudermill,* 470 U.S. at 543, 105 S.Ct. at 1494. The employee's opportunity to respond must be a meaningful opportunity to prevent the deprivation from occurring. *See Daniels v. Williams,* 474 U.S. 327, 338, 106 S.Ct. 662, 678, 88 L.Ed.2d 662 (1986) (Stevens, J., concurring). We find that the short telephone conversation between Tarpey and Domiano that occurred at 7:30 a.m. on the Tuesday following the enactment of the ordinance provided Domiano with an inadequate opportunity to respond to Tarpey's charge that Domiano was insubordinate. Tarpey conceded at his deposition that Domiano had informed him during the phone conversation that Domiano had to leave for work and was going to be late for his full-time job due to Tarpey's call. While an elaborate hearing was not required, the basis for any dismissal would be sounder and this lawsuit certainly could have been avoided if the defendants had simply informed Domiano of their concerns during the phone conversation and arranged an informal hearing, even later that same morning, to air the dispute prior to possible discharge. The balance tilts in plaintiff's favor when we consider the

great risk of an erroneous discharge resulting from the type of hearing plaintiff was accorded and the likely value of a more meaningful hearing. The fiscal and administrative burdens imposed on the defendants by requiring them to do more than place an early morning telephone call prior to terminating a Village employee is minimal and the benefits to the Village and its employees would be appreciable.

Although we find that the brief telephone call to Domiano was insufficient pretermination process, we emphasize that our decision does not restrict a municipal employer's ability to effectively discipline insubordinate employees. In the present case, if Village officials believed that Domiano's refusal to abide by the new patient transportation policy posed a threat to public safety and the efficient operation of the fire department, they could have suspended Domiano until the Village board could consider the matter and Domiano had an opportunity to explain his position. If the hearing revealed that Domiano persistently refused to follow a lawfully enacted ordinance, the Village would certainly be justified in promptly discharging him. The purpose of the hearing, of course, would be to investigate the charge of insubordination against Domiano, not to elicit his views on the propriety of Village ordinances. Had the Village given Domiano a post-termination hearing, the necessary scope of its pretermination hearing would also have been narrower. *See Loudermill*, 470 U.S. at 547 n. 12, 105 S.Ct. at 1496 n. 12.

Accordingly, we find that while the district court correctly entered summary judgment on plaintiff's first amendment claim, the court erred when it found that plaintiff had no property interest in his employment. Plaintiff clearly had a property interest in his job and his pretermination hearing did not satisfy the requirements of due process. The district court is therefore AFFIRMED IN PART AND REVERSED IN PART. Rule 36 shall not apply. The parties shall bear their own costs.