954 F.2d 461
 72 Ed. Law Rep. 532
 Rita A. HOHMEIER, Plaintiff-Appellant,
v.
LEYDEN COMMUNITY HIGH SCHOOLS DISTRICT 212, Charles
Thompson, individually and as Principal of West Leyden High
School, Ruth Schwartz, individually and as an employee or
agent of Leyden High Schools, and Linda Worner, individually
and as an employee or agent of Leyden High Schools,
Defendants-Appellees.
 No. 90-3373.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 24, 1991.
Decided Jan. 22, 1992.
Rehearing Denied March 2, 1992.
 
 Donald S. Rothschild (argued), Rothschild & Associates, Oak Park, Ill., Elmer Gertz, Chicago, Ill., for plaintiff-appellant.
 Michael J. Duggan (argued), J. Todd Faulkner, Klein, Thorpe & Jenkins, Chicago, Ill., for defendants-appellees.
 Before CUDAHY and MANION, Circuit Judges, and ESCHBACH, Senior Circuit Judge.
 CUDAHY, Circuit Judge.
 
 
 1
 Appellant Rita Hohmeier brought this suit against Leyden Community High Schools District 212 and various school administrators under 42 U.S.C. § 1983 after she was fired from her job at West Leyden High School. Hohmeier alleged that her discharge was irrational and arbitrary, in violation of her right to both procedural and substantive due process under the Fourteenth Amendment. The district court granted summary judgment for the defendants, and Hohmeier appeals. 748 F.Supp. 657 (1990). Although we have difficulty with some of the district court's reasoning, we agree with the result and affirm the grant of summary judgment.
 
 I.
 
 2
 On November 6, 1987, Rita Hohmeier was fired from her job as secretary of the English and Social Studies departments of West Leyden High School, where she had been employed for just over eight years. At the time she was informed of her termination, Hohmeier was given a seven-page memorandum detailing the reasons for her discharge and a copy of Leyden Board of Education Policy 4223, entitled "Termination of Employment." Policy 4223 provides, in relevant part: "The Official Supervisor may recommend that an Instructional/supervisory supportive staff employee's employment be terminated for proper cause." Short App. at 4. Policy 4223 also states that "[a]ll cases of discharge shall be subject to the regular established grievance procedure, Policy 4222, which allows for appeals to the Board of Education." Id. Hohmeier had never seen Policy 4223 before her termination meeting; in fact, the parties agree that the defendants had purposefully concealed its existence from school district employees.
 
 
 3
 Shortly after this meeting, Hohmeier requested a copy of Policy 4222, the grievance procedure referenced in Policy 4223. Pursuant to that procedure, Hohmeier presented her grievance to, successively, the principal of West Leyden High School, the District 212 business manager, the District 212 Superintendant of Schools and the Board of Education of District 212. Her termination was upheld at each step.
 
 
 4
 Having failed to obtain satisfaction under the District 212 grievance procedures, Hohmeier then filed this action under 42 U.S.C. § 1983. Hohmeier alleged that Policy 4223 conferred upon her a property interest in continued employment requiring "good cause" for discharge. She claimed that the defendants' arbitrary and irrational termination of her employment had deprived her of that property interest in violation of her rights to both procedural and substantive due process under the Fourteenth Amendment.
 
 
 5
 The district court granted summary judgment for the defendants. The court found, first, that Hohmeier had failed to demonstrate that she had a property interest in her employment that was protected by the Fourteenth Amendment. The court noted that, for purposes of due process claims, " '[p]roperty interests are, of course, created by state law.' " 748 F.Supp. at 660 (quoting Lohorn v. Michal, 913 F.2d 327, 335 (7th Cir.1990)). In this case, the court held, the relevant "state law" is state common law defining when an employee handbook creates an enforceable contract right to continued employment. Specifically, the court relied on the decision of the Illinois Supreme Court in Duldulao v. St. Mary of Nazareth Hospital Center, 115 Ill.2d 482, 106 Ill.Dec. 8, 505 N.E.2d 314 (1986), which held that "an employee handbook or other policy statement creates enforceable contractual rights if the traditional requirements for contract formation are present." Id. at 318. The court concluded that the facts alleged by Hohmeier could not fulfill those requirements and that therefore Policy 4223 did not give Hohmeier a property right in continued employment.
 
 
 6
 The court also rejected Hohmeier's substantive due process claim. The court found that "[t]he Seventh Circuit has acknowledged that 'a substantive due process claim can be brought in the context of property interests.' " 748 F.Supp. at 661 (quoting New Burnham Prairie Homes, Inc. v. Burnham, 910 F.2d 1474, 1480 (7th Cir.1990)). The court also noted, however, that Seventh Circuit precedent requires a plaintiff making such a claim to allege " 'either a separate constitutional violation or the inadequacy of state law remedies.' " Id. (quoting New Burnham Prairie Homes, 910 F.2d at 1481). The court found that Hohmeier's complaint failed to fulfill this requirement.
 
 
 7
 We review de novo the district court's grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate only if, drawing all reasonable inferences in favor of the nonmoving party, we conclude that there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. New Burnham Prairie Homes, 910 F.2d at 1477.
 
 II.
 
 8
 Hohmeier argues that the district court erred in concluding that she did not have a protectable property interest in continued employment absent proper cause for termination. First, Hohmeier contends that the court's reliance on state contract law as the only way to establish a property interest in continued employment was inappropriate in this case. She argues that because Policy 4223 is not a rule issued by a private employer, but one promulgated by a public body pursuant to its statutory rule-making authority, it may create property entitlements without regard to considerations of contract law. Second, Hohmeier claims that even if the contract requirements of Duldulao are the only way to establish a property interest in continued employment she has fulfilled those requirements.
 
 
 9
 A. District Court's Exclusive Reliance on State Contract Law
 
 
 10
 In Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the Supreme Court stated:
 
 
 11
 Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law--rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.
 
 
 12
 Id. at 577, 92 S.Ct. at 2709. Illinois state law imposes on public school boards such as Leyden a "duty" to "adopt and enforce all necessary rules for the management and government of the public schools of their district." Ill.Rev.Stat. ch. 122 § 10-20.5 (1989). Chapter 122 further provides that "[r]ules adopted by the school board shall be filed for public inspection in the administrative office of the district." Id. We agree with Hohmeier that because Policy 4223 was promulgated by the Leyden School Board, a state entity, pursuant to its statutory rule-making authority, it constitutes an "existing rule ... that stems from ... state law." Therefore, contrary to the holding of the district court, the Leyden School Board policy could create a property entitlement in Hohmeier without regard to the "traditional requirements of contract formation" set forth in Duldulao. We conclude, however, that Policy 4223 does not in fact create such an entitlement because it does not impose a binding obligation on the school board to terminate employees only for cause.
 
 
 13
 The Illinois Supreme Court has made clear that a state statute or regulation may create a property entitlement in continued employment without creating a contractual right to that benefit. In Fumarolo v. Chicago Board of Education, 142 Ill.2d 54, 153 Ill.Dec. 177, 566 N.E.2d 1283 (1990), the Court found that neither the Chicago Board of Education's policy manual nor the statute pursuant to which the manual had been issued created enforceable contract rights in tenured teachers to continued employment. The Court also held, however, that the same policy manual and statute did create a property interest in continued employment:
 
 
 14
 [T]here is no doubt that the State law and the reiteration of State law made by the board through guidelines and oral representations created a legitimate expectation of continued employment during good behavior and competent conduct, thereby creating a "property" interest in continued employment. Plaintiffs were, therefore, entitled to due process before their permanent tenure was reduced to employment under four-year renewable contracts.
 
 
 15
 Id. 153 Ill.Dec. at 201, 566 N.E.2d at 1307.[1] The Court's discussion of plaintiffs' claims to a property entitlement created by state statute contains no reference whatsoever to Duldulao, although the Court explicitly dealt with Duldulao in addressing plaintiffs' contractual argument.
 
 
 16
 A municipal ordinance also may create a property entitlement without regard to state contract law. In Domiano v. River Grove, 904 F.2d 1142 (7th Cir.1990), this Court found that the River Grove fire chief had a property interest in his employment by virtue of a particular municipal ordinance. We stated that "[a] village ordinance, like a state statute or constitutional provision, may create a protectable property interest in employment." Id. at 1148 (emphasis added); see also Lewis v. Hayes, 152 Ill.App.3d 1020, 106 Ill.Dec. 102, 505 N.E.2d 408 (3d Dist.1987). Rather than assimilate statutes and ordinances to contract law, we have continued to recognize them as distinct sources of property entitlements: "Property interests in employment may be created by express or implied contracts, municipal ordinances or state laws." Farmer v. Lane, 864 F.2d 473, 478 (7th Cir.1988) (emphasis added).
 
 
 17
 Finally, this Court has held that a regulation or rule promulgated by a state agency pursuant to statute may create a property interest without regard to the traditional requirements of contract formation. Fleury v. Clayton, 847 F.2d 1229 (7th Cir.1988); Huggins v. Isenbarger, 798 F.2d 203 (7th Cir.1986). Such regulations can create an entitlement "even if the [authorizing] statute does not." Miller v. Henman, 804 F.2d 421, 424 (7th Cir.1986), cert. denied, 484 U.S. 844, 108 S.Ct. 136, 98 L.Ed.2d 93 (1987); see also Huggins, 798 F.2d at 206. We see no reason to distinguish, in principle, between a state statute, a municipal ordinance or an administrative regulation and a public school board policy issued pursuant to statutory rule-making authority. Each is an "existing rule" that may create a property entitlement by its own force, without reference to contract law. Therefore, the district court's apparent reliance on Duldulao as the only relevant "state law" in determining whether Hohmeier had a property interest in her continued employment was incorrect.[2]
 
 
 18
 Nevertheless, we agree with the district court's conclusion that Hohmeier did not have a protectable property interest in continued employment. A rule or regulation, even if it contains substantive criteria, must have "binding force" in order to create consitutionally protected property. Miller, 804 F.2d at 424. "Whether a writing establishes an 'obligation' or not depends on whether it is enforceable under the law of the jurisdiction that adopted it." Id. at 425. Although Policy 4223 could create a property entitlement in employees of District 212 without reference to traditional contract law principles, it does not in fact do so because it does not impose a binding obligation on the School Board.
 
 
 19
 In Miller v. Henman, we held that the general operating procedures of the Bureau of Prisons did not confer on prisoners either a liberty or a property interest in having security classifications and transfer decisions made only according to the substantive criteria set forth in those procedures. Id. at 423. Rather, we concluded that the instructions contained in the Bureau of Prisons manual were mere "criteria" meant to guide the staff in exercising the Attorney General's discretion rather than enforceable rules limiting that discretion. In reaching that determination, we noted that the Attorney General had not promulgated the assignment polices under the Administrative Procedure Act; thus, "[t]hey are not in the Code of Federal Regulations, that repository of rules with legal effects." Id. at 426. Further, the regulations had been kept secret from the prisoners, "ensur[ing] that prisoners acquire no expectations, 'mutual' or otherwise." Id. The secrecy of the policies also was an additional indication that they were internal guidelines only, directed to the staff rather than the prisoners. Id. at 427. We concluded: "Because the documents are designed to bind the staff of the Bureau of Prisons to the Attorney General's will, rather than to create claims of entitlement, they do not establish a liberty or property interest." Id.
 
 
 20
 Similarly, Policy 4223 is directed at the school district's administrators, not its staff employees; in fact, it was purposefully kept secret from the employees. In addition, the statute under which the Leyden School Board promulgated Policy 4223 explicitly states that the School Board is to adopt rules for "the management and government of the public schools" in its district. This language suggests that the policy is intended to guide the internal management of the school system, rather than to create enforceable rights against the district. Further, the decision as to what rules to adopt is clearly committed to the Board's discretion; the statute requires the Board to "adopt and enforce" only those rules that it finds "necessary." Presumably, the Board may also revoke any of its rules if the Board determines that they are no longer "necessary." We noted in Miller:
 
 
 21
 As a promise without consideration usually does not create a contract, so a policy manual usually does not create a rule binding on the proprietor of the manual.... When the policy manual can vanish with a wave of the administrator's wand, or when the administrator is free to disregard his own words, the [plaintiff] has nothing of substance and therefore neither liberty nor property.
 
 
 22
 804 F.2d at 425. This observation aptly describes the policy at issue in this case.
 
 
 23
 Finally, nothing in Policy 4223 itself suggests that it imposes a binding obligation on the board. Its language is not mandatory, but permissive: "The Office Supervisor may recommend that an Instructional/supervisory supportive staff employee's employment be terminated for proper cause." The Supreme Court has held that regulations must contain " 'explicitly mandatory language,' i.e., specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow, in order to create a liberty interest." Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 463, 109 S.Ct. 1904, 1910, 104 L.Ed.2d 506 (1989). We have found these principles equally applicable to the analysis of alleged property interests. Wallace v. Robinson, 940 F.2d 243, 246-47 (7th Cir.1991) (en banc). The Thompson Court found that state procedures providing that a prison visitor "may be excluded" under certain circumstances "lack[ed] the requisite relevant mandatory language." 490 U.S. at 464, 109 S.Ct. at 1910. Under those procedures, the Court continued, "[v]isitors may be excluded if they fall within the described categories, ... but they need not be. Nor need visitors fall within one of the described categories in order to be excluded." Id. (emphasis in original). Similarly, under School Board Policy 4223 an administrator "may recommend" that an employee be terminated "for good cause," but he is not required to do so; nor need good cause exist in order for the employee to be terminated. School Board Policy 4223 lacks the requisite mandatory language to confer on Hohmeier a property interest in continued employment.
 
 B. Application of Duldulao
 
 24
 In Duldulao v. St. Mary of Nazareth Hospital Center, 115 Ill.2d 482, 106 Ill.Dec. 8, 505 N.E.2d 314 (1987), the Illinois Supreme Court held that "an employee handbook or other policy statement creates enforceable contractual rights if the traditional requirements for contract formation are present." Id. 106 Ill.Dec. at 12, 505 N.E.2d at 318. Specifically, the court stated, the policy statement must fulfill the following requirements:
 
 
 25
 First, the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made. Second, the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer. Third, the employee must accept the offer by commencing or continuing to work after learning of the policy statement.
 
 
 26
 Id. The district court found that even if Policy 4223 met the first of these requirements, it clearly did not satisfy the latter two, because Hohmeier did not receive a copy of the policy until her termination meeting. Thus, she "could not have reasonably believed that the policy manual contained an offer of employment, and she could not have based her employment on the language in" that provision. 748 F.Supp. at 660. We agree. An employee who has just been fired could not reasonably believe that a document given to her at the time of termination in conjunction with a seven-page memorandum detailing the reasons for the termination constituted an offer of employment.
 
 
 27
 Hohmeier argues on appeal that her case fulfills the second requirement of Duldulao because she "was eager to continue working after having learned of Rule 4223's guaranty of continued employment." Appellant's Br. at 23. This argument is without merit. Even if Hohmeier honestly believed when she was provided with Policy 4223 at her termination meeting that the policy constituted an offer of employment, that belief would not have been "reasonable," as required by Duldulao. Hohmeier had no contractual right to continued employment under Duldulao.
 
 III.
 
 28
 Hohmeier also challenges the district court's grant of summary judgment in favor of defendants on her substantive due process claim based on her failure to allege the inadequacy of state law remedies. She argues that this ruling, and the decisions of this circuit on which it is based, should be rejected as "a misapplication of procedural analysis to substantive due process claims." Appellant's Br. at 28. In the alternative, she contends that even if this requirement were appropriate in the context of substantive due process claims she has satisfied it. We do not reach either of these arguments because we find that Hohmeier has failed to meet the threshold requirement of demonstrating that she has a protectable interest implicating substantive due process.
 
 
 29
 We have already concluded that Hohmeier has no state-created property entitlement to continued employment.[3] Nor is such an interest inherent in the Constitution; as we noted above, the Constitution does not create property entitlements. Finally, Hohmeier does not allege that her claimed right to continued employment constitutes a protected liberty interest, which the Supreme Court has held may arise from the due process clause itself. Thompson, 490 U.S. at 460, 109 S.Ct. at 1908; Hewitt v. Helms, 459 U.S. 460, 466, 103 S.Ct. 864, 868, 74 L.Ed.2d 675 (1983). Hohmeier cannot establish a violation of substantive due process under the facts of this case.
 
 IV.
 
 30
 For the foregoing reasons, the decision of the district court is AFFIRMED.
 
 
 
 [1]
 Although the Illinois Supreme Court's discussion of the plaintiffs' due process claims was not "formally necessary" because the Court had already held the entire act unconstitutional on other grounds, the Court's analysis clearly was not intended to be mere dicta. The Court explained that it was addressing these claims "[b]ecause these issues may arise again should the legislature choose to reenact the legislation in a different form," 153 Ill.Dec. at 198, 566 N.E.2d at 1304, and used the phrase "we hold" throughout its discussion
 
 
 [2]
 This Court's decisions in Corcoran v. Chicago Park District, 875 F.2d 609 (7th Cir.1989), and Lee v. County of Cook, 862 F.2d 139 (7th Cir.1988), are not to the contrary. In both of those cases we applied Duldulao in upholding the dismissal of a former public employee's due process claim on the ground that he or she had failed to establish a property interest in continued employment. However, nothing in those decisions suggests that Duldulao provides the only way for a public employee to establish a property interest in his or her job. In fact, our decision in Lee clearly suggests the opposite. There, the plaintiff's failure to meet the requirements of Duldulao constituted only one of our grounds for holding that she had no property interest in continued employment; we dealt separately with the plaintiff's argument that her supervisor's employment policy had created a "mutually explicit understanding" protected by the due process clause pursuant to the Supreme Court's decision in Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). In Corcoran, the plaintiff based his claimed property interest exclusively on two letters written by the President of the Chicago Park District's Board of Commissioners, which the plaintiff alleged created a contractual right to continued employment; unlike Hohmeier, he offered no argument based on a rule promulgated by a public body pursuant to state statute. Thus, Lee and Corcoran stand only for the proposition that a public employee may establish a property interest in continued employment based on Duldulao, not that he must do so in that way
 
 
 [3]
 It is unclear whether Hohmeier could state a substantive due process claim based on a state-created property interest even if she could establish such an interest. As we noted in Kauth v. Hartford Ins. Co., 852 F.2d 951 (7th Cir.1988):
 The Supreme Court has not yet provided clear guidance on whether the arbitrary deprivation of a property interest will implicate substantive due process when the plaintiff does not challenge the constitutionality of the statutory scheme. Most Supreme Court opinions based on substantive due process involve some fundamental right that is categorized as a liberty interest. In contrast, the Supreme Court usually applies procedural due process in cases dealing with a deprivation of property.
 Id. at 956 (citations omitted, emphasis in original).