# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

Nos. 03-2182 & 03-2327

KAREN BEISCHEL,

*Plaintiff-Appellee,*
*Cross-Appellant,*

v.

STONE BANK SCHOOL DISTRICT, BOARD OF
EDUCATION FOR STONE BANK SCHOOL DISTRICT,
MARGARET D. KASIMATIS, AMY LENTZ,
SUSAN MUSCHE, and KATHY ROSENHEIMER,

*Defendants-Appellants,*
*Cross-Appellees.*

———————

Appeals from the United States District Court
for the Eastern District of Wisconsin.
No. 00-C-623—**Charles N. Clevert**, Jr., *Judge.*

———————

ARGUED JANUARY 7, 2004—DECIDED MARCH 29, 2004

———————

Before FLAUM, *Chief Judge*, and MANION and EVANS,
*Circuit Judges.*

EVANS, *Circuit Judge.* Karen Beischel's 2-year contract
as district administrator and principal of the tiny Stone
Bank School District in Oconomowoc, Wisconsin, was not

renewed. Beischel, however, was not about to go away without a fight, so she sued the District and some of the individual board members in federal court where she prevailed on some claims and lost on others. The District has appealed.

The Stone Bank School District serves approximately 315 families in one school covering kindergarten through eighth grade. In 1997 the District hired Beischel to be both its administrator and the principal of its school. She was given a contract for a 2-year term ending on June 30, 1999. In general, her duties included the "supervision and management of the professional work of the schools [sic] and the promotion of the pupils." In particular, her duties involved establishing a curriculum, preparing a budget, resolving problems with students, parents, and staff, participating in community events as a representative of the District, and working with the school board. She was to work "under the direction" of the board.

Problems began in the first year of the contract, but, hoping things would improve, the board voted to give Beischel the statutory maximum salary increase for the next year. Rather then improving, however, the situation deteriorated. By August or September 1998, members of the board raised concerns about Beischel's performance with the board president, Margaret Kasimatis. The board, which under § 118.24 of the Wisconsin Statutes has sole authority to terminate or renew employment contracts with administrators, began to discuss whether Beischel's contract should be renewed when it expired in June. After several meetings, on January 14, 1999, the board issued a formal notice to Beischel advising her that it was considering not renewing her contract. The notice advised Beischel that within 7 days she had a right to request a hearing on the contract nonrenewal. The notice also indicated that if she requested a hearing, one would be held 2 weeks later on January 28.

By letter delivered to Kasimatis on January 21, Beischel requested a public hearing and also asked for a written list

of the reasons the board was considering the nonrenewal of her contract. The board drew up a list and sent it, along with supporting documents and exhibits, to Beischel and her attorney on January 22.

Beischel's attorney objected to the January 28 hearing date and requested more time to prepare. The District offered to delay the hearing if, in turn, Beischel would agree that District policy 2001.5 did not apply to the proceedings. That policy said that at least "5 months prior to the expiration of the administrator's contract, the Board will indicate in writing (by registered mail) if the Board decides on termination of the administrator's contract. Dismissal procedures as defined in section 118.24 of the Wisconsin Statutes will be followed." The board asked for Beischel's agreement because it feared that a delay in the hearing date might run afoul of the policy. Beischel refused to agree that the policy did not apply, but she continued to demand a delay of the hearing date. Her requests were denied. Beischel also requested that the District retain an independent adjudicator to preside over the hearing, which otherwise, under Wisconsin law, would be presided over by the board. That request was also denied.

Getting nowhere, on January 28 Beischel filed an action in the state circuit court for Waukesha County seeking a temporary restraining order to prohibit convening the hearing that evening. The restraining order was entered; it prohibited the District from holding a hearing before February 15. The hearing finally went forward on February 23, 1999, and ran for 12 hours before wrapping up at 6 o'clock the next morning. At the hearing, Beischel called as many witnesses as she wished, including board members. Later that day, the board voted 4 to 1 not to renew her contract. The notice of nonrenewal was hand-delivered to Beischel's office and also sent to her residence via registered mail that same day.

Meanwhile, in the circuit court action, Beischel's attorney requested time to amend the pleadings to include claims

involving the nonrenewal proceedings. No amendments were ever filed, however, and the case was set for dismissal on January 10, 2000. Beischel agreed to the dismissal but requested attorney's fees as a "prevailing party" on her claims regarding the hearing date. That request was denied, and the case was dismissed by order on May 30, 2000.

Then on May 4, Beischel initiated the present proceedings in the district court where summary judgment motions were filed. Each side prevailed on some issues and lost on others. The bottom line was that Beischel was granted judgment on her claim that she had been denied a property interest without due process of law. The defendants, except for Kathy Rosenheimer, were denied qualified immunity on that claim. However, the defendants won dismissal of Beischel's claim based on a denial of a liberty interest without due process of law and all of her claims under Wisconsin law. Even though there is no final judgment in the case, the defendants have appealed both the decision denying qualified immunity and the decision on the merits. We, of course, have appellate jurisdiction over the decision denying qualified immunity as a matter of law. *Mitchell v. Forsyth*, 472 U.S. 511 (1985). And although we are ordinarily "skittish" about the doctrine of pendent appellate jurisdiction, *see Greenwell v. Aztar Indiana Gaming Corp.*, 268 F.3d 486 (7th Cir. 2001), we agree with the parties who contend that the issues on the merits are so intertwined with the appealable claim that jurisdiction exists over the entire appeal. And as it turns out, the dispositive issues in our decision today are issues on the merits rather than on qualified immunity.

Although the claims in this case are brought under four theories (federal due process, breach of contract, violation of Wisconsin Statutes § 118.24(6) and (7) and violation of school board policy number 2001.5), they fall into two main categories for our analysis: notice of nonrenewal of the

contract and the fairness of the hearing itself. We review a district court's decision on summary judgment *de novo*, drawing our own conclusion of law and fact from the record before us. *Thiele v. Norfolk & Western Ry. Co.*, 68 F.3d 179 (7th Cir. 1995).

As argued before us, the notice claims involve the timing of the notice under state statute, the contract, and the District policy. There is no claim that the notice was inadequate to inform Beischel of what was happening.

As to timing, § 118.24(7) Wis. Stat. requires a preliminary notice that the board is considering nonrenewal of a contract 5 months prior to its expiration. Section 118.24(6) Wis. Stat. requires that the actual nonrenewal be communicated to the employee 4 months prior to the expiration of the contract. Beischel's contract says that nonrenewal of the contract "shall be governed by Sec. 118.24(6) and (7), Wisconsin Statutes." In contrast, the District policy says that at least 5 months prior to the expiration of the contract the board will indicate in writing "if the Board decides on termination of the administrator's contract." The policy also states, however, that dismissal procedures defined in § 118.24 Wis. Stat. will be followed. Before Beischel obtained the state court restraining order, the hearing was scheduled so it would be convened in compliance with her contract, the state statute, and the policy. Delaying the hearing meant that the final decision on her status was made 4 months, not 5, prior to the termination of her contract. In other words, it was in compliance with her contract and the state statute but not the District policy.

We need not determine the effect of noncompliance with the policy. The notice claims are barred by the doctrine of claim preclusion and were properly dismissed. It is well-settled that "a final judgment is conclusive in all subsequent actions between the same parties as to all matters which were litigated or which might have been litigated in

the former proceedings." *DePratt v. West Bend Mut. Ins. Co.*, 334 N.W.2d 883, 885 (Wis. 1983). Three elements must exist for claim preclusion to apply. There must be an identity between the parties or their privies in the former and present lawsuits. There must be an identity between the causes of action in the two suits. And finally, there must have been a final judgment on the merits in a court of competent jurisdiction in the first lawsuit. *Northern States Power Co. v. Bugher*, 525 N.W.2d 723 (Wis. 1995). Beischel's claim is that there was no identity between the causes of action in the two suits she filed. We disagree. Wisconsin has adopted a transactional approach to this issue. Under this approach, a second suit is ordinarily barred "if both suits arise from the same transaction, incident or factual situation . . . ." *Pliska v. City of Stevens Point, Wis.*, 823 F.2d 1168, 1173 (7th Cir. 1987).

Under this analysis, Beischel's notice claims are barred. As we noted above, she filed suit in the circuit court for Waukesha County where she obtained a temporary restraining order delaying the hearing on the nonrenewal of her contract. The order was issued following a hearing at which the judge indicated that he could "draw a distinction . . . between termination and failing to renew," hinting that the District policy was not applicable and the restraining order would therefore not harm anyone. Because the judge was considering a temporary restraining order, however, he did not make a finding in that regard. He indicated that he would allow the parties to brief the issue. That the briefing never occurred does not change the fact that Beischel brought her claims regarding notice to the state circuit court. She clearly could have obtained a finding on whether the policy provisions regarding termination of a contract apply in this situation—and, perhaps more importantly, whether they supersede the notice provisions in the state statute and in her contract. Perhaps fearing the direction in which the state court judge was leaning, she did not do that

and instead seeks to litigate the notice issue in this case. She argues that the issues were not ripe at the time the request for a restraining order was filed—that they did not ripen until the hearing was held. That argument may save her other claims, but it cannot save the claims regarding notice. Beischel chose her forum and was required to litigate the notice issue in that forum.

We move, then, to the claims regarding the nonrenewal hearing. Beischel alleges that the actions of the school board members deprived her "of her liberty interests and property interests without due process of law . . . ." The most seriously contested claim is whether the board was an impartial decisionmaker at Beischel's hearing. Beischel argues that the board did not have the appearance of impartiality because it simultaneously was complainant, prosecutor, witness, and judge. In addition, some members, she contends, felt personally attacked by her and some made prehearing statements that created a impermissible risk of partiality. She adds that the board attorney was overly active in the hearing process.

Although the School District does not vigorously press the issue, we will first examine whether Beischel has a property interest in the renewal of her contract, which would in turn require due process protections. To have a protectable property interest, a plaintiff must show a legitimate claim of entitlement, not just a hopeful expectation. *Board of Regents v. Roth*, 408 U.S. 564 (1972). We look to independent sources, such as state law, to determine the scope of a property interest. *Dixon v. City of New Richmond*, 334 F.3d 691 (7th Cir. 2003). Beischel's claim comes from her contract, which in turn references the state law we have just been discussing. Her contract says that "[r]enewal and non-renewal of this contract shall be governed by Sec. 118.24(6) and (7) Wisconsin statutes." The question is whether § 118.24 Wis. Stat. confers a property interest in her continued employment.

Under Wisconsin law, we have said, a dichotomy exists between employment "at-will" and employment which can be terminated only "for cause." The latter receives due process protections. *Flynn v. Kornwolf*, 83 F.3d 924 (7th Cir. 1996). A statute can confer a protected property interest on an employee, as § 62.13(5) did for Wisconsin police officers and firefighters. *Larson v. City of Tomah*, 193 Wis. 2d 225 (1995); *Schultz v. Baumgart*, 738 F.2d 231 (7th Cir. 1984). Section 62.13(5) requires "just cause" for terminations.

The problem in this case is that § 118.24 and Beischel's contract seem to make her case fall between the two poles set up in Wisconsin law. Does the contract give Beischel a legitimate expectation of continued employment? We have found no case based on Wisconsin law which gives us a definitive answer.

Under Illinois law, in a similar fact situation, we have chosen to pass the question as to whether a property interest exists and go directly to the issue of the adequacy of the procedures. In *Crim v. Board of Education of Cairo School District No. 1*, 147 F.3d 535 (7th Cir. 1998), a superintendent was told his contract would not be renewed. He requested a hearing. At the hearing he was not allowed to question board members as witnesses. In his subsequent due process claim, he said that the board deprived him of a property interest because state law required that his contract be renewed automatically unless the board gave notice, stated the reasons, and afforded him a hearing. We found that there was no need to decide whether the statute creates a cognizable property interest for purposes of the federal due process clause because he received all the process to which he was due.

In contrast, another Illinois case, *Head v. Chicago School Reform Board of Trustees*, 225 F.3d 794 (7th Cir. 2000), involved the nonrenewal of a principal's contract. We found that his contract made it absolutely clear that the principal

had no expectation of renewal and that the Illinois School Code did not override the contract. His contract was exceptionally clear. It said, "This Agreement, including and not withstanding the procedures set forth herein, shall expire at the end of its stated term and shall not grant or create any contractual rights or other expectancy of continued employment beyond the term of this Agreement." At 802. Beischel's contract contains no such explicit language.

Despite the somewhat gray area in which we find ourselves, we are convinced that under Wisconsin law Beischel did not have a legitimate expectation that her employment would continue beyond the 2-year term of her contract. There are no statutory limitations as to the bases on which the nonrenewal decision can rest. In *Hohmeier v. Leyden Community High Schools District 212*, 954 F.2d 461 (7th Cir. 1992), we noted that "[t]he Supreme Court has held that regulations must contain 'explicitly mandatory language,' *i.e.*, specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow, in order to create a liberty interest. *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 463, 109 S. Ct. 1904, 1910, 104 L. Ed. 2d 506 (1989). We found these principles equally applicable to the analysis of alleged property interests. See *Wallace v. Robinson*, 940 F.2d 243, 246-47 (7th Cir.1991) (en banc)."

Even if Beischel had a property interest, however, her due process rights were not violated. Her claim that they have been grows out of the procedure set out in § 118.24 Wis. Stat. That statute contemplates that the school board is the body that hires and fires district employees. In doing so, it must comply with certain procedures, such as the notice requirements we just discussed. In addition, the law provides that the employee "has the right to a hearing before the board prior to being given written notice of refusal to renew the contract." The statute then sets the school board up as the body which both considers nonrenewal and

ultimately decides following a hearing whether a contract will be renewed. The board complied with the statutory requirements, but Beischel nevertheless contends due process requires that an outside decisionmaker hear her case.

We disagree. *Withrow v. Larkin*, 421 U.S. 35 (1975), involved whether a doctor's license should be suspended for allowing an unlicensed doctor to perform abortions in his clinic. The Court said that it was not a violation of due process to have the administrative agency, which investigated the complaint, also act as the decisionmaker. Referring to a bevy of examples, the Court summarized, "our cases, although they reflect the substance of the problem, offer no support for the bald proposition . . . that agency members who participate in an investigation are disqualified from adjudicating." At 52. Exceptions to that proposition exist if the adjudicator has a pecuniary interest in the outcome or if he has been the "target of personal abuse or criticism from the party before him." At 47.

Those principles were applied directly to Wisconsin school boards in *Hortonville Joint School District No. 1 v. Hortonville Education Association*, 426 U.S. 482 (1976), which involved a teachers' strike which violated state law. When teachers were ordered to return to work, some did not, and the board decided to conduct disciplinary hearings for those remaining on strike. The issue the Court considered was "whether School Board members, vested by state law with the power to employ and dismiss teachers, could, consistent with the Due Process Clause of the Fourteenth Amendment, dismiss teachers engaged in a strike prohibited by state law." At 483-84. The teachers contended that because the board had manifested personal bitterness toward the teachers and had been engaged in negotiating with them, it would be a violation of their right to an impartial decisionmaker for the board to conduct the hearing. The teachers analogized their case to the revoca-

tion of parole in *Morrissey v. Brewer*, 408 U.S. 471 (1972), in which someone not involved in the case was required as the decisionmaker. In rejecting the analogy, the Court noted that under Wisconsin law a school board has broad power over the management of the property and affairs of the school district and is the only body vested with the power to employ and dismiss teachers. In that situation, the board could, consistent with due process concerns, conduct the hearing and render a decision. The Court said:

> State law vests the governmental, or policymaking, function exclusively in the School Board and the State has two interests in keeping it there. First, the Board is the body with overall responsibility for the governance of the school district; it must cope with the myriad day-to-day problems of a modern public school system including the severe consequences of a teachers' strike; by virtue of electing them the constituents have declared the Board members qualified to deal with these problems, and they are accountable to the voters for the manner in which they perform. Second, the state legislature has given to the Board the power to employ and dismiss teachers, as a part of the balance it has struck in the area of municipal labor relations; altering those statutory powers as a matter of federal due process clearly changes that balance. Permitting the Board to make the decision at issue here preserves its control over school district affairs, leaves the balance of power in labor relations where the state legislature struck it, and assures that the decision whether to dismiss the teachers will be made by the body responsible for that decision under state law.

At 495-96.

In our case, the Stone Bank school board, having the same powers and duties as those held by the Hortonville board, was considering whether to renew the contract of its

top administrator. Before it could finally decide what to do, it had to give Beischel notice and allow her an opportunity to present her case for renewal. The board heard her case for 12 hours through the night, and its attorney facilitated the hearing process. Through this ordeal, there is no indication that Beischel did not have every opportunity to plead her case and attempt to convince the board to renew her contract.

But the question remains whether there was something so unusual in this case that the board was biased to an extent that allowing it to make the decision was a violation of the Due Process Clause. As we said, the *Withrow* Court held that actual bias might arise if an adjudicator has a pecuniary interest in the outcome or has been a target of personal abuse from the party before him. No board member had a pecuniary interest in the outcome of this hearing. Beischel contends, though, that certain board members felt that they were a target of personal abuse from her. Board members Amy Lentz, Susan Musche, and Kasimatis answered yes to a question whether they felt personally attacked by Beischel for disagreeing with her. However, their explanations of the attacks are less than compelling. Lentz said Beischel personally attacked her by saying she was "inappropriately confrontational with teaching staff and had a history of being banned from a previous school." Musche felt Beischel had "questioned her character and motives" by saying she had "blindsided" her on an issue and by accusing her of inappropriately ordering textbooks for her own children whom she home-schooled. Kasimatis also felt "blindsided" and said Beischel acted "out of a personal agenda." We are not convinced that these generalized statements can, as a matter of law, overcome the presumption that the board members were carrying out their duties with honesty and integrity.

As the Court also said in *Withrow*:

> The contention that the combination of investigative and adjudicative functions necessarily creates an

> unconstitutional risk of bias in administrative adjudication has a much more difficult burden of persuasion to carry. It must overcome a presumption of honesty and integrity in those serving as adjudicators; and it must convince that, under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicate powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is adequately implemented.

At 47.

It is surely a strange posture Beischel finds herself in—arguing, in effect, that school board members cannot judge her fairly because she has been sufficiently abusive to them as to make them biased. It could hardly be desirable to encourage employees to use personal abuse as a tactical choice in an attempt to disqualify a board and get in its place an alternative decisionmaker. And while we are on the subject, we are also somewhat bewildered by Beischel's choice at the hearing to question the school board members at length—throughout the night, in fact. It is hard to see how such questioning was designed to convince them that her contribution to the school district supported the renewal of her contract.

As the cases show, it is not an easy matter to overcome the presumption of "honesty and integrity." Nor should it be here. Wisconsin Statutes charge school boards with the duty of hiring school district administrators. The school board is accountable to the voters of the district for the decisions it makes. For the board to delegate its statutory responsibility and its obligation to the voters in any but the most compelling circumstances could be seen as passing the buck on one of the most important, and perhaps difficult, decisions it is charged with making. The board was not required to recuse itself from this spat and turn its author-

ity over to an "independent adjudicator," unaccountable to the voters of the Stone Bank School District.

Finally, Beischel asserts what seems to be a separate claim that the board violated her liberty interest by a press release after the hearing. It stated in part that "Beischel has demonstrated a pattern of . . . providing misinformation to community and board members so many times now that there is a loss of trust and credibility, not only for the board but a segment of our community as well . . . ."

A person has no cognizable liberty interest in his reputation; consequently, allegations which merely damage one's reputation do not implicate a liberty interest. *See Paul v. Davis*, 424 U.S. 693 (1976). This is true even when a statement causes serious impairment of one's future employment. *Hojnacki v. Klein-Acosta*, 285 F.3d 544 (7th Cir. 2002). But when a state actor attacks a person's good name in a manner that makes it "virtually impossible" for the person to find new employment, that person's liberty interest to pursue his occupation is infringed. *Townsend v. Vallas*, 256 F.3d 661 (7th Cir. 2001). The alleged defamatory statements must be false statements of fact. *Strasburger v. Bd. of Educ. of Hardin County*, 143 F.3d 351 (7th Cir. 1998). In such a case, a hearing is required. *Doyle v. Camelot Care Centers, Inc.*, 305 F.3d 603 (7th Cir. 2002). What we have here are the conclusions reached by the board after a hearing. They are not the sort of statements giving rise to a deprivation of a liberty interest.

In short, Beischel's claims cannot be sustained. The decision of the district court, insofar as it resolved issues in Beischel's favor, is REVERSED and the case is REMANDED for the entry of an order granting judgment to the defendants.

A true Copy:

    Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*