Thomas CORCORAN,
Plaintiff–Appellant,

v.

CHICAGO PARK DISTRICT, a municipal corporation, and Jesse Madison,
Defendants–Appellees.

No. 88–1824.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 28, 1989.

Decided May 23, 1989.

Rick Halprin, Chicago, Ill., for plaintiff-appellant.

James D. Wascher, Chicago Park Dist. Law Dept., Chicago, Ill., for defendants-appellees.

Before POSNER, RIPPLE and MANION, Circuit Judges.

RIPPLE, Circuit Judge.

In this appeal, Thomas Corcoran contests the district court's grant of the defendants' motion to dismiss his complaint for failure to state a claim. Mr. Corcoran submits that the defendants terminated his employment with the Chicago Park District in violation of the due process clause of the

fourteenth amendment and in breach of an implied employment contract. We affirm the judgment of the district court.

## I.

### A. *Background*

In September 1978, Thomas Corcoran began working for the Chicago Park District and, in May 1982, he was named Assistant Treasurer. In May 1986, two new appointees were placed on the Park District's Board of Commissioners. Evidently, the new appointees and an existing Board member formed a new majority. The new Board selected defendant Jesse Madison as Executive Vice–President. Mr. Madison assumed authority over areas which had been previously under the direction of District General Superintendent Edmund L. Kelly. Mr. Kelly subsequently resigned his position.

Because of concern that the new Board might discharge a number of Park District employees, several bills were introduced in the Illinois legislature in June 1986. The proposed legislation, if enacted, would have foreclosed the dismissal of present employees except for good cause. To discourage the passage of this legislation, Walter A. Netsch (one of the new Board appointees and then-President of the Board of Commissioners) sent a letter to members of the State Senate. The letter urged the legislators to vote against the bills.[1] In the letter, Mr. Netsch denied rumors that the Park District intended to "engage in wholesale firing," and added that, "[e]mployees will be retained and hired solely on the basis of their performance."

On July 1, 1986, Mr. Netsch sent all Park District employees a copy of his letter to the senators, along with the following note:

I thought you would be interested in seeing a copy of the letter I have recently written on behalf of a majority of the Park District Commissioners (attached). It accurately expressed our hopes and intentions for the District which I know you share. Best wishes for the Fourth of July holiday.

Mr. Corcoran received this communication. He continued to work for the Park District until September 14, 1987, when Mr. Madison asked him to resign. Mr. Corcoran refused. Mr. Madison then sent him a letter informing him that his employment with the Park District was terminated. In the letter, Mr. Madison explained that "a new administration has a right to choose its own management team."

### B. *The Complaint*

Mr. Corcoran brought this action in the district court on January 12, 1988. His complaint presented three claims. In the first count, he alleged that the Netsch correspondence established a contractual right to continued employment that also constituted a property interest protected by the due process clause. He alleged that his discharge without a hearing violated his right to due process under the fourteenth amendment.

---

1. The letter in its entirety reads as follows:
Dear Senator:
On behalf of the Commissioners of the Chicago Park District, I am writing to urge your defeat of the above bill. Our purpose in all our actions has been to effect an orderly transition at the Park District that does not interfere with essential programs and services. There have been rumors that we will engage in wholesale firing. This is untrue and totally without foundation. Employees will be retained and hired solely on the basis of their performance. Our goal is simply the improvement of the park system through improved management, long-term planning, and restoration of the parks to their original beauty. By improving management and opening up the process of governance, we hope to make Chicago's parks the finest in the nation. Our efforts have already been rewarded by a groundswell of support throughout the city. The above legislation would impede our work and institute a stalemate which we have assiduously tried to avoid. We are a well-qualified board and would like your support. Mr. Bartholomay is a businessman and sportsman; Dr. Burroughs is a museum director and former teacher; and I am a retired planner, architect and artist. Of the remaining two nominees, one is an attorney and professor; the other is a businesswoman. None of us now serve in nor do we seek public office. Walter Netsch, President Chicago Park District Board of Commissioners

In the second count, Mr. Corcoran alleged that his dismissal violated his first amendment right to exercise his political beliefs and to form political associations. Mr. Corcoran pointed out that he had been a registered Democrat and a member of the 47th Ward Democratic Organization. However, in the 1987 Democratic primary, Mr. Corcoran had run for City Treasurer against the incumbent, a "regular Democratic candidate." Moreover, he had supported Solidarity Party candidate Edward Vrdolyak in the 1987 mayoral election. Mr. Corcoran alleged that, because his discharge occurred within a short time after a newspaper article reported that Mr. Corcoran would join the Republican Party, his dismissal was politically motivated.

In the third count, Mr. Corcoran alleged, on the basis of the same allegations, a breach of contract claim based on state law.

### C. *Decision of the District Court*

The district court held that the Netsch letters did not constitute a contract. "Hopes and intentions do not make out a clear offer of a promise." Mem. op. at 5. Furthermore, "the statement that employees would be retained on the basis of performance is not definite and certain enough to constitute a contract." *Id.* Consequently, the court found it unnecessary to consider whether Mr. Netsch had the authority to bind the Park District or to characterize definitively the relationship between the letters and the various statutes and ordinances regulating the Park District. It also found it unnecessary to determine whether, if a contract had existed, it would have constituted a property interest protected by the fourteenth amendment. Accordingly, counts 1 and 3 of the complaint were dismissed.

With respect to the second count, the district court based its dismissal on alternate grounds. First, the court noted that Mr. Corcoran had not alleged any facts from which it could be established that his discharge over a year after a new majority gained control of the Board was due to his political activities. "The reason for his discharge—choosing a new management team —cannot be interpreted as a euphemism for choosing employees based on politics." Mem. op. at 6–7. Alternatively, the court noted that, under a consent decree in *Shakman v. Democratic Organization of Cook County*, No. 69 C 2145 (N.D.Ill. Oct. 26, 1984) (consent decree),[2] the position occupied by Mr. Corcoran was one for which political affiliation can be considered. Mem. op. at 8.[3]

### II.

### Discussion

### A. *The Standard*

Mr. Corcoran's suit was dismissed for failure to state a claim. We review such a dismissal *de novo*. The well-pleaded factual allegations of the complaint and all reasonable inferences which follow from the allegations must be taken as true. *Kush v. American States Ins. Co.*, 853 F.2d 1380, 1382 (7th Cir.1988). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

### B. *Analysis*

■ To establish a claim under the due process clause of the fourteenth amendment, Mr. Corcoran must demonstrate that he has the sort of property interest in his continued employment that is protected by the due process clause. Property rights are "created and their dimensions are de-

---

**2.** This decree was entered after the district court's original judgment granting partial summary judgment on the issue of liability to the plaintiffs in *Shakman v. Democratic Organization of Cook County*, 481 F.Supp. 1315 (N.D.Ill. 1979). This court's partial reversal of the district court's judgment, *Shakman v. Democratic*

*Organization of Cook County*, 829 F.2d 1387 (7th Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 1026, 98 L.Ed.2d 991 (1988), did not affect the consent decree relied upon by Mr. Corcoran. *See* Mem. op. at 8 n. 3.

**3.** This claim is not before us on appeal.

fined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).[4] We turn therefore to an examination of the law of Illinois to determine if Mr. Corcoran had a property interest protected by the fourteenth amendment.

■ In the absence of an understanding to the contrary, an employment agreement presumptively is assumed to be an "at-will" arrangement which can be terminated at any time and for any reason by either the employer or employee. *Martin v. Federal Life Ins. Co.,* 109 Ill.App.3d 596, 65 Ill.Dec. 143, 147, 440 N.E.2d 998, 1002 (1982). This presumption can be rebutted by the terms of an explicit contract. In *Duldulao v. St. Mary of Nazareth Hosp.,* 115 Ill.2d 482, 106 Ill.Dec. 8, 505 N.E.2d 314 (1987), the Illinois Supreme Court held that "an employee handbook or other policy statement" will establish contractual rights so long as the traditional requirements for contract formation (offer, consideration, acceptance) are present. 106 Ill.Dec. at 12, 505 N.E.2d at 318. Even when the adoption of the handbook or policy takes place subsequent to the employee's hiring, enforceable contractual rights exist so long as three conditions have been met:

> First, the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made. Second, the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an

offer. Third, the employee must accept the offer by commencing or continuing to work after learning of the policy statement.

*Duldulao,* 106 Ill.Dec. at 12, 505 N.E.2d at 318; *DeFosse v. Cherry Elec. Prod. Corp.,* 156 Ill.App.3d 1030, 109 Ill.Dec. 520, 510 N.E.2d 141 (1987). At issue here is whether the Netsch correspondence contained a definite promise, and whether Mr. Corcoran could have reasonably believed it to be making an offer of tenured employment.

■ In *Lee v. County of Cook,* 862 F.2d 139, 142 (7th Cir.1988), we emphasized that no enforceable contract is formed unless there has been communication of a clear and explicit promise. We believe our holding there must guide our disposition of this case. Mr. Corcoran relies upon Mr. Netsch's assurance that, "[e]mployees will be retained and hired solely on the basis of their performance." He asserts that this declaration clearly established his right to continued employment absent cause for dismissal. However, in his letter to the employees, Mr. Netsch wrote that the statement reflected the Park District's "hopes and intentions." When the two letters are read together, as the parties agree they should be, it is apparent that no firm offer to continued employment was made. The precatory language offered Mr. Corcoran, at best, an expectancy in continued employment, not a contractual right. By contrast, the rights and duties of the parties were expressed with some detail in the documents analyzed in *Duldulao* and other handbook cases. *See, e.g., Free v. Holy Cross Hosp.,* 153 Ill.App.3d 45, 106 Ill.Dec. 397, 505 N.E.2d 1188 (1987); *Land v. Michael Reese Hosp. & Medical Center,* 153 Ill.App.3d 465, 106 Ill.Dec. 470, 505 N.E.2d

---

**4.** We recognize that "an explicit contractual provision may not always foreclose the possibility that ... [an employee] ... has a 'property' interest.... Explicit contractual provisions may be supplemented by other agreements implied from 'the promisor's words and conduct in light of the surrounding circumstances.'" *Perry v. Sindermann,* 408 U.S. 593, 601–02, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972) (quoting 3 A Corbin on Contracts § 562 (1960)). However, a mere subjective and unilateral expectancy is not protected by due process. *Board of Regents v.*

*Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Moreover, a statement can create a mutually explicit understanding only if it is made by a person who has the legal authority to make such a commitment. *See Shlay v. Montgomery,* 802 F.2d 918 (7th Cir.1986). There certainly appears to be no basis for Mr. Corcoran to recover on this theory, and he understandably does not make such an argument. Rather, he bases his argument on the text of the two letters.

1261 (1987).[5] Indeed, the contrast between this case and *Duldulao* is striking. The employee handbook at issue in *Duldulao* expressly stated that it was " 'designed to clarify your *rights* and duties as employees.' " 106 Ill.Dec. at 13, 505 N.E.2d at 319 (emphasis supplied by *Duldulao* court). Consequently, the Illinois court held that "an employee would reasonably believe" that a clear offer had been made. *Id.* Here, the personnel policy in question was only briefly described in two short notes, and its language cannot be construed as establishing any contractual rights. The evidence proffered by Mr. Corcoran is insufficient to overcome the presumption that his employment was on an at-will basis.

## III.

### Conclusion

We hold no contract was created by the Netsch correspondence. Mr. Corcoran's employment relationship with the Park District was at-will, and thus it could be terminated by either party at any time.[6] The district court properly dismissed the suit for failure to state a claim. The judgment of the district court is affirmed.

AFFIRMED.

---

5. Indeed, the *Duldulao* decision favorably refers to the analysis of the Minnesota Supreme Court in *Pine River State Bank v. Mettille,* 333 N.W.2d 622 (Minn.1983). Although the Minnesota court in that case concluded that a handbook's disciplinary measures were definite enough to create contractual rights and remedies, the court also held that a "general statement of policy" created no entitlement to job security. 333 N.W.2d at 630.

6. Given our disposition of this case, there is no need to determine whether Mr. Netsch had either the statutory or apparent authority to bind the Board of Commissioners. *See Upadhya v. Langenberg,* 834 F.2d 661, 666 (7th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 2016, 100 L.Ed.2d 603 (1988); *Hadley v. County of Du-Page,* 715 F.2d 1238, 1242 (7th Cir.1983), *cert. denied,* 465 U.S. 1006, 104 S.Ct. 1000, 79 L.Ed.2d 232 (1984).