In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-1155

JAMES BROOKS,

*Plaintiff-Appellant,*

*v.*

PACTIV CORPORATION and
PRAIRIE PACKAGING, INC.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 10 C 6510 — **Suzanne B. Conlon**, *Judge.*

ARGUED SEPTEMBER 5, 2012 — DECIDED SEPTEMBER 6, 2013

Before POSNER, KANNE, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* In 1999 James Brooks, an assembly-line operator for Prairie Packaging, Inc., was seriously injured in an on-the-job accident and lost his left hand, wrist, and forearm. He filed a workers' compensation claim that same year seeking recovery for a permanent and total disability. That claim

remains pending. Following Brooks's injury, Prairie Packaging kept him in its employ despite his inability to work, treating him as a disabled employee on a company-approved leave of absence. This allowed Brooks to continue to receive healthcare coverage under the company's employee-benefits plan. His significant ongoing medical costs were paid by his employer-based health insurance, supplemented by payments through the workers' compensation proceeding.

Pactiv Corporation acquired Prairie Packaging in 2007 and for a few years continued this arrangement. Early in 2010 Pactiv sent Brooks a letter instructing him to submit documentation verifying his ability to return to work; failure to submit the required verification would mean the termination of his employment. Because his injury was totally disabling, Brooks did not submit the required verification and Pactiv fired him. As a consequence, he lost his healthcare coverage under the company's employee-benefits plan.

Brooks responded by filing this action against Pactiv and Prairie Packaging asserting claims under ERISA[1] for benefits due and breach of fiduciary duty. He also asserted a claim for retaliatory discharge under Illinois law. The district court dismissed the complaint for failure to state a claim and Brooks appealed.

We affirm in part and reverse in part. The district court correctly dismissed the ERISA claim for benefits because Brooks has not alleged that the company's employee-benefits

---

[1] The Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1461 (2012).

plan promised him postemployment benefits. The ERISA fiduciary-duty claim also fails because Pactiv acted in its capacity as an employer, not as a fiduciary, when it terminated Brooks's employment and canceled his health insurance.

Although the complaint fails to state a valid ERISA claim, it does allege facts sufficient to state a claim for common-law retaliatory discharge. Illinois recognizes a limited cause of action for discharges committed in retaliation for an employee's pursuit of a workers' compensation claim. Brooks's allegations, taken as true, are sufficient to state a claim that Pactiv retaliated against him by requiring him to certify, on pain of termination, that he was able to return to work. The parties were at an impasse in Brooks's long-running workers' compensation claim, and one plausible interpretation of Pactiv's ultimatum was that it was retaliatory. So this claim must be reinstated; because it sounds in state law, however, the district court may wish to consider relinquishing supplemental jurisdiction over it. *See* 28 U.S.C. § 1367(c)(3) (2012).

## I. Background

Brooks was employed as a foam-line operator at Prairie Packaging's plant in Bedford Park, Illinois, working on an assembly line manufacturing Styrofoam plates. In 1999 while he was working on the line, his left hand and arm were pulled into a grinder machine, causing grave injuries. In a series of surgeries that followed, doctors amputated his left hand, wrist, and forearm. Health complications, both physical and mental, continue to plague him.

Within six months of the accident, Brooks filed a claim with the Illinois Workers' Compensation Commission seeking compensation for his ongoing expenses and a monetary award for permanent and total disability based on the loss of his left arm. That claim is as yet unresolved; efforts to settle on an amount for the total disability have been unsuccessful. In the meantime, the workers' compensation proceeding has covered some of Brooks's medical expenses and provided more than $100,000 in wage compensation.

After the accident Prairie Packaging continued to retain Brooks in its employ, treating him as a disabled employee on a company-approved leave of absence. Under this arrangement Brooks, like other employees, continued to be eligible for benefits under the Prairie Packaging Inc. Benefits Program ("the Plan"), the company's employee-benefits plan. The Plan offered employees access to various benefits, including health insurance, dental insurance, short-term and long-term disability insurance, and life insurance. Employees received "Annual Enrollment Guides" summarizing the benefits available under the Plan. The Guides specified that disabled employees could continue receiving benefits under the Plan and further explained that electing long-term disability insurance would allow employees with long-term disabilities to continue receiving benefits until they reached the age of 65 or were able to return to work, whichever was earlier. Brooks opted for health and dental insurance for himself and his children. During the years following his accident, he continued to receive these benefits as a disabled employee on a leave of absence. Nothing in the second amended complaint indicates

that Brooks elected any of the other benefits available under the Plan.

Pactiv acquired Prairie Packaging in 2007 and also took over as administrator of the Plan. For the next three years, Pactiv continued Prairie Packaging's arrangement with Brooks. From January 2007 to May 2010, BlueCross BlueShield of Illinois provided health insurance under the Plan and covered many of Brooks's medical bills, although as we said, some of his medical expenses were paid through the workers' compensation proceeding.

Early 2010 saw an increase in Brooks's medical costs. In two days alone—on January 15 and 19—he incurred $7,407 in medical charges, all but $18 of which were submitted to BlueCross BlueShield. The insurer paid $6,521 of these charges. At this point Pactiv reevaluated Brooks's employment status. On March 1, 2010, the company sent Brooks a letter informing him that it had been reviewing all open workers' compensation cases since it purchased Prairie Packaging. The letter instructed Brooks to submit documentation verifying that he was able to return to work in a safe and effective manner. Failure to do so by March 31, Pactiv warned, would result in the termination of his employment. Finally, the letter informed Brooks that the termination of his employment would end his health and welfare benefits but would not affect his workers' compensation benefits.

Brooks found himself in a quandary. He was unable to return to work and thus could not provide the verification necessary to remain in Pactiv's employ. And certifying that he was able to work would undercut his workers' compensation

case, in which he claimed a permanent and total disability. Yet his failure to submit the required verification would mean the end of his employment and the loss of his health insurance through the Plan.

Brooks did not submit the required verification. On May 3, 2010, Pactiv terminated his employment. As a consequence, Brooks was no longer eligible for health and dental insurance under the Plan, and his insurance coverage was canceled.

Brooks then filed this action against Prairie Packaging and Pactiv asserting claims under ERISA and the Illinois common-law doctrine of retaliatory discharge. (For simplicity we refer to the defendants jointly as "Pactiv.") Brooks amended his complaint twice; the second amended complaint asserts four causes of action: an ERISA claim for retaliatory termination, *see* 29 U.S.C. § 1140; an ERISA claim for breach of fiduciary duty, *see id.* § 1132(a)(3); an ERISA claim for benefits due, *see id.* § 1132(a)(1)(B); and a tort claim for retaliatory discharge under Illinois law.

Pactiv moved to dismiss the second amended complaint for failure to state a claim. *See* FED. R. CIV. P. 12(b)(6). The district court granted the motion, holding as follows: (1) the ERISA retaliatory-termination claim failed because Brooks's injuries made him unqualified for his position and he failed to plausi-bly allege a retaliatory motive; (2) the ERISA fiduciary-duty claim failed because Pactiv did not act as a fiduciary when it terminated his employment; (3) the ERISA-benefits claim failed because Brooks did not name the Plan as the defendant and did not allege that the terms of the Plan gave him a right to continued benefits postemployment; and (4) the state-law

retaliatory-discharge claim failed because the allegations in the complaint did not show a causal link between the workers' compensation claim and the termination of Brooks's employment.

## II. Discussion

We review the dismissal of Brooks's complaint de novo, accepting the factual allegations as true and drawing reasonable inferences in Brooks's favor. *See McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 879 (7th Cir. 2012). To survive Pactiv's motion to dismiss, Brooks needed to include sufficient factual content in his complaint to plausibly state a claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard requires more than a mere possibility that the claim is valid; something akin to a nonnegligible probability is required, although plausibility does not equate to the preponderance standard that applies at trial. *Atkins v. City of Chicago*, 631 F.3d 823, 831–32 (7th Cir. 2011).

Brooks has not challenged the dismissal of his ERISA claim for retaliatory termination, so we confine our review to the ERISA claims for recovery of benefits due and breach of fiduciary duty and the state-law retaliatory-discharge claim.

### A. ERISA Claim for Benefits

Under ERISA § 502(a)(1)(B), a "civil action may be brought … by a participant or beneficiary … to recover benefits due to him under the terms of his plan." 29 U.S.C.

§ 1132(a)(1)(B). The district court dismissed Brooks's § 502(a)(1)(B) claim on two grounds: (1) he brought it against the wrong defendant by naming Pactiv as the defendant rather than the Plan itself; and (2) he has not alleged that the terms of the Plan gave him the right to postemployment benefits.

The first ground needs only brief discussion. It is well established that an ERISA claim for benefits due ordinarily should be brought against the employee-benefits plan itself. *See Larson v. United Healthcare Ins. Co.*, No. 12-1256, 2013 WL 3836236, * 3–4 (7th Cir. July 26, 2013); *Feinberg v. RM Acquisition, LLC*, 629 F.3d 671, 673 (7th Cir. 2011); *Mote v. Aetna Life Ins. Co.*, 502 F.3d 601, 610–11 (7th Cir. 2007); *Magin v. Monsanto Co.*, 420 F.3d 679, 686 (7th Cir. 2005); *Neuma, Inc. v. AMP, Inc.*, 259 F.3d 864, 872 n.4 (7th Cir. 2001); *Mein v. Carus Corp.*, 241 F.3d 581, 585 (7th Cir. 2001); *Riordan v. Commonwealth Edison Co.*, 128 F.3d 549, 551 (7th Cir. 1997). "An ERISA § 502(a)(1)(B) claim is 'essentially a contract remedy under the terms of the plan.' " *Larson*, 2013 WL 3836236, at *4 (quoting *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 695 (7th Cir. 2010)). As such, "a cause of action for 'benefits due' must be brought against the party having the obligation to pay" the benefits. *Id.* at *6. In the usual case, "the plan owes the benefits and is the right defendant." *Id.* There are other possibilities as well, *see id.* at *6–8, but we need not explore them here. Brooks has not mounted a serious challenge to the district court's ruling that the Plan was the right defendant on the benefits claim. By failing to meaningfully challenge the court's ruling, Brooks has waived any claim of error. *See Senese v. Chi. Area I.B. of T. Pension Fund*, 237 F.3d 819, 823 (7th Cir. 2001).

The benefits claim is insufficient in any event. The first and critical allegation in a § 502(a)(1)(B) claim is that the plaintiff is a participant or beneficiary entitled to benefits under the terms of an employee-benefits plan. Sometimes plaintiffs attach the relevant plan documents to the complaint as insurance against the risk that the complaint's description of the plan's terms is ambiguous or otherwise deficient. Brooks did not do so. As a result, we are left with the description of the Plan contained in the second amended complaint. That description is notable for what it does not contain. There are no allegations that the terms of the Plan promised Brooks continued health-insurance benefits after his employment was terminated. True, the complaint does refer generally to benefits due to disabled employees, but Brooks was no longer an employee and was not entitled to those benefits. In short, the complaint contains no allegations about benefits promised to disabled *former* employees like Brooks. That's a critical omission.

Brooks relies on the complaint's allegations about long-term disability insurance. Citing *DeFosse v. Cherry Electrical Products Corp.*, 510 N.E.2d 141 (Ill. App. Ct. 1987), he argues that the Plan's offer of long-term disability coverage suggests that he was entitled to continued benefits postemployment. Not so. In *DeFosse* the Illinois Appellate Court held that the termination of the plaintiff's employment did not necessarily terminate his contractual right to disability benefits. *Id.* at 145. At the time the plaintiff lost his job, he had satisfied the company's requirements for receiving short-term and long-term disability benefits and was in fact receiving disability payments. *Id.* at 143, 145. The relevant contract did not specify that disability benefits would discontinue upon termination of

employment. On these facts the court held that "[a] disability program would be meaningless in the case of employments at will if the employer was permitted to arbitrarily terminate benefits by discharging the employee who is already on disability." *Id.* at 145. Brooks hangs his hat on this statement.

*DeFosse* is neither binding nor persuasive here. Although Brooks alleges that the Plan offered long-term disability insurance, he never claims that he elected this optional coverage. He never alleges that he applied for or received long-term disability insurance, much less that he fulfilled the requirements to obtain it or was otherwise qualified to receive these benefits. Moreover, long-term disability insurance and health insurance are different insurance products; Brooks's argument conflates the two. The bare allegation that the Plan *offered* long-term disability insurance does not salvage the § 502(a)(1)(B) claim for benefits.

## B. ERISA Fiduciary-Duty Claim

The district court dismissed the ERISA fiduciary-duty claim, reasoning that Pactiv was not acting as a fiduciary when it terminated Brooks's employment and canceled his health and dental insurance. ERISA's fiduciary-duty provision requires plan fiduciaries to "discharge [their] duties with respect to a plan solely in the interest of the participants and beneficiaries and … for the exclusive purpose of … providing benefits to participants and their beneficiaries … and … defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A). This fiduciary duty is akin to the "duty of loyalty … borne by a trustee under common law."

*Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 466 (7th Cir. 2010). A breach of fiduciary duty is actionable under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

"In every case charging breach of ERISA fiduciary duty, … the threshold question is … whether [the defendant] was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). ERISA defines fiduciary status in functional terms:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A); *see Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993). As the text of this provision reflects, "[a] fiduciary within the meaning of ERISA must be someone acting in the capacity of manager, administrator, or financial adviser to a 'plan.' " *Pegram*, 530 U.S. at 222.

The second amended complaint alleges that Pactiv is the administrator of the Plan. A plan administrator qualifies as a fiduciary, *see* 29 U.S.C. § 1002(21)(A)(iii), but that's not the end

of the analysis. ERISA "does not describe fiduciaries simply as administrators of the plan, or managers or advisers. Instead, it defines an administrator, for example, as a fiduciary only 'to the extent' that he acts in such a capacity in relation to a plan." *Pegram,* 530 U.S. at 225–26 (quoting 29 U.S.C. § 1002(21)(A)). In other words, "an ERISA fiduciary does not always 'wear the fiduciary hat.' " *Larson*, 2013 WL 3836236, at *10 (quoting *Pegram*, 530 U.S. at 225). The viability of Brooks's fiduciary-duty claim turns on whether Pactiv was acting as a fiduciary when it terminated Brooks's employment and canceled his health and dental insurance.

When an employer also serves as the administrator of its employee-benefits plan, it wears two hats, and not all of the employer's business decisions involve acts of an ERISA fiduciary. *See Varity Corp. v. Howe*, 516 U.S. 489, 498 (1996); *Fletcher v. Kroger Co.*, 942 F.2d 1137, 1139 (7th Cir. 1991). Fiduciary acts include, for example, the management and administration of the plan, the management and disposition of plan assets, the dispensation of investment advice, and making benefits determinations. *See Larson*, 2013 WL 3826236, at *9; *In re Luna*, 406 F.3d 1192, 1207 (10th Cir. 2005); *Hickman v. Tosco Corp.*, 840 F.2d 564, 566 (8th Cir. 1988).

An employer does not act as an ERISA fiduciary when it decides to terminate an employment relationship. *See Pegram*, 530 U.S. at 225; *Bodine v. Emp'rs Cas. Co.*, 352 F.3d 245, 251–52 (5th Cir. 2003); *Sutton v. BellSouth Telecomms., Inc.*, 189 F.3d 1318, 1321 (11th Cir. 1999); *Hickman*, 840 F.2d at 566–67. Although the decision to fire an employee obviously affects the employee's benefits, the act is "inherently *not* fiduciary in

nature." *Bodine*, 352 F.3d at 252. It follows that when Pactiv fired Brooks, the company wore its "employer" hat, not its "plan administrator" hat. The decision did not involve the administration or management of the Plan, the management or disposition of the Plan's assets, the dispensation of investment advice, or a benefits determination. Accordingly, the district court correctly concluded that Pactiv was not acting as a fiduciary when it took the action alleged in Brooks's complaint.

Brooks insists that the district court misconstrued his claim, which he characterizes as a challenge to the cancellation of his health and dental insurance, not a challenge to Pactiv's decision to terminate his employment. That line is too fine. The cancellation of Brooks's health and dental coverage followed as a direct consequence of the termination of his employment and cannot be separated from the termination itself.

Moreover, because Brooks was no longer a Plan participant once his employment ceased, Pactiv did not owe him any fiduciary duties when it canceled his coverage. Former employees are plan participants only if they are "or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer … or whose beneficiaries may be eligible to receive any such benefit." 29 U.S.C. § 1002(7). The Supreme Court has explained that this definition includes "former employees who 'have … a reasonable expectation of returning to covered employment' or who have 'a colorable claim' to vested benefits." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117 (1989) (omission in original) (quoting *Kuntz v. Reese*, 785 F.2d 1410, 1411 (9th Cir. 1986) (per curiam), *abrogated on other*

*grounds by Kayes v. Pac. Lumber Co.*, 51 F.3d 1449 (9th Cir. 1995)).

Nothing in the second amended complaint supports a colorable claim to vested health and dental benefits. Nor has Brooks alleged facts suggesting that he might return to employment at Pactiv or otherwise become eligible for benefits in the future. Because Pactiv did not act as an ERISA fiduciary when it terminated Brooks's employment and canceled his health insurance, the district court properly dismissed the fiduciary-duty claim.

## C. Illinois Retaliatory-Discharge Claim

The Illinois Workers' Compensation Act governs the rights and liabilities of employers and employees when employees are injured in the course of their employment. *See* 820 ILL. COMP. STAT. 305/1-30 (2012); *Kelsay v. Motorola, Inc.*, 384 N.E.2d 353, 356 (Ill. 1978). The Act creates "a comprehensive scheme to compensate employees injured on the job." *Beatty v. Olin Corp.*, 693 F.3d 750, 753 (7th Cir. 2012). The Act's fundamental purpose is "to afford protection to employees by providing them with prompt and equitable compensation for their injuries." *Kelsay*, 384 N.E.2d at 356.

To effectuate this purpose, the Illinois Supreme Court has recognized a cause of action in tort for discharges committed in retaliation for an employee's pursuit of a workers' compensation claim. *Id.* at 357. An employee may recover for retaliatory discharge if he proves "(1) that he was an employee before the injury; (2) that he exercised a right granted by the Workers'

Compensation Act; and (3) that he was discharged and that the discharge was causally related to his filing a claim under the Workers' Compensation Act." *Clemons v. Mech. Devices Co.*, 704 N.E.2d 403, 406 (Ill. 1998). The cause of action for retaliatory discharge deters employers from presenting their employees with the untenable choice of retaining their jobs or pursuing compensation for their injuries through workers' compensation proceedings. *See Hartlein v. Ill. Power Co.*, 601 N.E.2d 720, 731 (Ill. 1992).

But Illinois courts have emphasized that the retaliatory-discharge cause of action is a narrow and limited exception to the employment-at-will doctrine. *See Zimmerman v. Buchheit of Sparta, Inc.*, 645 N.E.2d 877, 881 (Ill. 1994) (plurality opinion); *Paz v. Commonwealth Edison*, 732 N.E.2d 696, 701 (Ill. App. Ct. 2000); *Beatty*, 693 F.3d at 753. An employer is not required to "retain an at-will employee who is medically unable to return to his assigned position; nor is an employer obligated to reassign such an employee to another position rather than terminate the employment." *Hartlein,* 601 N.E.2d at 728 (citations omitted).

At first glance Pactiv's termination of Brooks's employment seems like a legitimate exercise of its authority to discharge an employee who is physically unable to perform his job. Taking the allegations in the complaint as true, there is no question that Brooks's disability renders him completely unable to work. Brooks readily admits as much; indeed, that is the essence of his workers' compensation claim. Pactiv therefore had no obligation to keep him in its employ when he could not perform his job; the company could terminate his employment

at any time on the basis that his physical disability totally prevented him from working.

But Pactiv could not take this action in retaliation for Brooks's exercise of his right to pursue his workers' compensation claim or to coerce him to forego or compromise his position in that case. "The mere existence of a valid or sufficient reason [for termination] … does not defeat a retaliatory discharge claim." *Siekierka v. United Steel Deck, Inc.*, 868 N.E.2d 374, 380 (Ill. App. Ct. 2007). The element of causation in retaliatory-discharge law does most of the work of separating lawful discharges from unlawful *retaliatory* discharges.

"Concerning the element of causation, the ultimate issue to be decided is the employer's motive in discharging the employee." *Clemons*, 704 N.E.2d at 406. Even if the employer has an arguably valid basis for firing an employee, it may still be liable for retaliatory discharge if the actual motivation for the termination was the employee's pursuit of a workers' compensation claim. *Siekierka*, 868 N.E.2d at 380–81. An employer may defeat the causation element of the claim by showing that the proferred valid reason for the termination was not pretextual. *Id.; see also Clemons*, 704 N.E.2d at 406.

The question of causation is the crux of the claim here. But that question—and the issue of pretext—cannot be resolved on the pleadings. Accepting Brooks's allegations as true, as we must, the circumstances surrounding his termination plausibly suggest that his pursuit of the workers' compensation claim motivated Pactiv to give him an ultimatum and then fire him. The workers' compensation case had stalled, and a significant gulf separated the parties in settlement negotiations. Pactiv

was paying Brooks's substantial and ongoing medical bills, either through the workers' compensation proceedings or through the health insurance he received under the Plan as a disabled employee on indefinite leave of absence. Brooks's medical bills began escalating in January 2010, and Pactiv sent its letter less than two months later. The letter required Brooks to verify that he could return to work—which was not possible and also would have undercut his position in the workers' compensation case—or face the termination of his employment and the loss of his health insurance.

These allegations are sufficient to support an inference that Pactiv's goal was to break the impasse in the workers' compensation case by coercing Brooks into submitting documentation inconsistent with his position in the case. In other words, a reasonable jury could infer that the motive behind Pactiv's ultimatum was to pressure Brooks to compromise or forego his workers' compensation claim.

The district court focused on the 11-year time lapse between the initiation of the workers' compensation case and the termination of Brooks's employment. The judge thought that the events were too remote in time to support a causal link between the two. The passage of time does not alone preclude a finding of causation. The lack of temporal proximity between the filing of a workers' compensation claim and the employee's discharge is a circumstantial fact—perhaps an important one here—but it does not *necessarily* defeat causation. The facts of this case exemplify why that is so. The circumstances plausibly suggest that Pactiv wanted to force a compromise in the stalemated workers' compensation case. It's reasonable to infer

that the company used Brooks's continued status as a disabled employee on extended leave of absence as leverage in the stalled negotiations.

Accordingly, the state-law retaliatory-discharge claim must be reinstated. However, because no federal claim remains in the case, the district court may wish to consider exercising its discretion to relinquish jurisdiction over the claim. *See* 28 U.S.C. § 1367(c)(3); *Fields v. Wharrie*, 672 F.3d 505, 518 (7th Cir. 2012). That's the general presumption in this situation. *See RWJ Mgmt. Co. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 479 (7th Cir. 2012). Because the only remaining claim sounds in Illinois law, we presume that the courts of Illinois would best resolve it.

For the foregoing reasons, we AFFIRM the judgment dismissing the ERISA claims. We REVERSE the dismissal of the state-law retaliatory-discharge claim and REMAND for further proceedings consistent with this opinion.