In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 23-3029

PAULA EMERSON,

*Plaintiff-Appellant,*

*v.*

THOMAS J. DART, Sheriff of Cook County, and COOK COUNTY,
ILLINOIS,

*Defendants-Appellees.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:21-cv-06407 — **Sharon Johnson Coleman**, *Judge.*

_____

ARGUED MAY 28, 2024 — DECIDED JULY 26, 2024

_____

Before JACKSON-AKIWUMI, LEE, and KOLAR, *Circuit Judges.*

LEE, *Circuit Judge.* In 2019, Paula Emerson was fired from
her job as a Cook County Corrections Officer. She sued Cook
County and the Cook County Sheriff Thomas Dart (Defend-
ants), claiming that they had terminated her in retaliation for
filing a workers' compensation claim with the Illinois Work-
ers' Compensation Commission (IWCC) in 2014. Defendants
moved to dismiss Emerson's action for failure to state a claim

pursuant to Federal Rule of Civil Procedure 12(b)(6), and the district court dismissed her claims without prejudice. Emerson then filed an amended complaint, and the district court dismissed it again, this time with prejudice. Emerson now appeals. Having taken a fresh look at Emerson's complaint, we affirm.

## I.  Background

### A.  Emerson's Allegations

Emerson began working for the Cook County Sheriff's Office and the Cook County Department of Corrections as a Corrections Officer in 2008. In 2012, she was diagnosed with anxiety, depression, and post-traumatic stress disorder. Based upon this, the Sheriff's Office placed Emerson on disability leave. Emerson remained on disability leave until 2019, when she claims the County fired her without warning.

As Emerson sees it, two events between the start of her leave in 2012 and her termination seven years later are relevant to her retaliation claim. First, in 2014, she filed an Application for Adjustment of Claim with the IWCC (she refers to this as her "workers' compensation claim"). That claim, she says, remains pending to this day.

Second, also in 2014, Emerson filed a lawsuit against Cook County and several of its employees, claiming they had retaliated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. The district court in that case entered summary judgment for the defendants and imposed sanctions against Emerson. We affirmed. *See Emerson v. Dart*, 900 F.3d 469 (7th Cir. 2018). The prior case is relevant, Emerson posits, because the attorneys who represented the County there also represented the County in the IWCC

proceedings and have discussed both cases with individuals in the Sheriff's Office responsible for her termination.

### B. Procedural Background

On October 13, 2020, Emerson filed a Charge of Discrimination with the U.S. Equal Opportunity Commission (EEOC) related to her termination. The EEOC issued her a right-to-sue letter on September 1, 2021. Emerson then filed a two-count complaint in November 2021 against Cook County and Cook County Sheriff Thomas Dart. Count I alleged that Defendants retaliated against her in violation of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101 *et seq.* Count II alleged that Defendants retaliated against her for filing a claim with the IWCC in violation of Illinois common law.

Defendants moved to dismiss both counts pursuant to Rule 12(b)(6) for failure to state a claim. In response, Emerson not only challenged the merits of Defendants' arguments, but also asked the court for leave to conduct limited discovery regarding what, if anything, the individuals responsible for her firing knew about her workers' compensation claim.

The district court granted Defendants' motion on January 10, 2023. As for Count I, the district court found that filing a workers' compensation claim was not a protected activity under the ADA. As for Count II, the court concluded that Emerson had not adequately pleaded facts suggesting that her workers' compensation claim was a reason for her firing. The district court dismissed both counts without prejudice and granted Emerson the opportunity to correct the deficiencies in her complaint. It, however, denied Emerson's discovery request, noting that she had failed to identify anyone at the

Sheriff's Office who might have known about her IWCC claim.

Shortly afterwards, Emerson amended her complaint, which remained largely unchanged. She did, however, supply additional details about her Title VII litigation against the County and its employees. Emerson's counsel confirmed during oral argument that she added these allegations in an attempt to show that the individuals responsible for her firing knew about her workers' compensation claim.

Defendants again moved to dismiss both counts, and the district court granted the request in August 2023, dismissing both claims with prejudice. In doing so, the court observed that the amended complaint did not cure the noted deficiencies. It still failed to assert any activity protected by the ADA. And the revised complaint did not plausibly allege that the commencement of Emerson's workers' compensation claim caused her termination five years later.

Emerson filed a Rule 59(e) motion for reconsideration on September 7, 2023. The district court denied it the next day, concluding it had already considered and rejected Emerson's arguments. Emerson appealed.

## II. Legal Standard

We review a district court's dismissal for failure to state a claim *de novo*. *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility requirement "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Put simply, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

At the pleadings stage, we "accept all well-pleaded factual allegations as true and view them in the light most favorable to the plaintiff." *Lavalais*, 734 F.3d at 632 (citing *Luevano v. Wal–Mart Stores, Inc.*, 722 F.3d 1014, 1027 (7th Cir. 2013)). That said, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885 (7th Cir. 2012). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## III. Analysis

On appeal, Emerson abandons her claim that Defendants unlawfully retaliated against her in violation of the ADA, focusing instead on her Illinois law retaliation claim. As she sees it, the district court erred when it determined that her allegations were insufficient to plausibly suggest her IWCC claim was the cause of her firing. Emerson also challenges the district court's decision to deny her discovery request. We consider each of these issues in turn.

### A. Dismissal of Retaliation Claim

A claim for workers' compensation retaliation is a creature of Illinois common law. *See Brooks v. Pactiv Corp.*, 729 F.3d 758, 767 (7th Cir. 2013); *see also Kelsay v. Motorola, Inc.*, 384 N.E.2d 353, 356 (Ill. 1978). To state a claim, Emerson must allege that (1) she was employed by Defendants at the time of her injury,

(2) she exercised a right granted by the Illinois Workers' Compensation Act (IWCA), and (3) her discharge was causally related to the exercise of her rights under the IWCA. *Hillmann v. City of Chicago*, 834 F.3d 787, 793–94 (7th Cir. 2016). The crux of this dispute, as is often the case, is whether Emerson's complaint sufficiently alleges that her IWCC claim caused her firing. Of course, she need not prove the point at the pleading stage, but her allegations must nudge her claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Here, Emerson's theory of causation boils down to just two facts. First, the Sheriff's Office and the Department of Corrections terminated her employment without warning in December 2019. Second, five years earlier, she had filed a workers' compensation claim that remained pending at the time of her firing. Emerson insists we can infer causation from this alone.[1]

Emerson's complaint needed to allege more. As it stands, the complaint fails to give any indication as to why, if her workers' compensation claim had caused her firing, the Sheriff's Office waited five years to take any action. For example, one can imagine a complaint alleging that Emerson's medical expenses had recently increased, causing the Sheriff's Office to see her workers' compensation claim in a more negative light. Alternatively, a complaint might allege that efforts to settle the claim had recently soured, sparking the Sheriff's

---

[1] In addition to these facts, Emerson's First Amended Complaint alleges outright that "Defendants terminated Plaintiff in retaliation for Plaintiff's prosecution of her Workers Compensation case." But this is a bald conclusory allegation that "must be supported by factual allegations" within the complaint. *Iqbal*, 556 U.S. at 679; *see also McReynolds*, 694 F.3d at 885.

Office's desire to fire her. Nothing like that appears in Emerson's complaint. Without filling this gap, the mere fact that Emerson filed a workers' compensation claim five years before she was fired falls short of stating a plausible claim for relief.[2]

Compare Emerson's complaint with the facts alleged in *Brooks*, 729 F.3d at 768. There, Brooks was fired eleven years after he had filed his workers' compensation claim with the IWCC. *See id.* But Brooks highlighted more recent developments in the workers' compensation case that might have played a role in his firing. For example, a new company had acquired Brooks's employer, and after the acquisition, it sent Brooks a letter saying that it was reviewing all open workers' compensation cases that had been filed against the former company. *Id.* at 762, 768. The letter also stated that Brooks would be terminated unless he supplied medical proof that he could safely return to work. *Id.* Two months later, he was fired. *Id.* at 763. Brooks also alleged that the defendant was

---

[2] Appellees cite to several cases, arguing that causation can never exist when there is a significant gap in time between the right exercised and the employee's termination. *See, e.g.*, *Fox v. Adams & Assocs., Inc.*, 166 N.E.3d 772, 790 (Ill. App. Ct. 2020); *see also Strong v. Quest Diagnostics Clinical Lab'ys Inc.*, No. 19-CV-4519, 2021 WL 354000, at *8 (N.D. Ill. 2021). These cases reflect the commonsense notion that the passage of time between two events weakens causation. But we hesitate to place much weight on these cases for two reasons. First, they were decided at the summary judgment stage. And second—perhaps because the parties in those cases had the benefit of discovery—the passage of time was just one of several factors the courts observed to find no causation. *See Fox*, 166 N.E.3d at 790 (concluding that, in addition to timing, "several intervening events establish[ed] that retaliation was not a plausible motive for discharging" the plaintiff).

paying his medical bills at the time, which were substantial, and that those bills began escalating only a few months before he received the letter. *Id.* at 768. Given this, we concluded that the passage of eleven years did "not *necessarily* defeat causation" because the allegations suggested a renewed retaliatory motive. *Id.* By contrast, Emerson alleges nothing of the sort.

Despite this, Emerson insists her termination "cannot be ascribed to any other factors" because she was on leave at the time she was fired. But Illinois is an at-will employment jurisdiction, and Defendants may have lawfully discharged her "for any reason or no reason" at all. *Turner v. Mem'l Med. Ctr.*, 911 N.E.2d 369, 374 (Ill. 2009); *see also Brooks*, 729 F.3d at 767. Because Defendants needed no reason to fire her, the fact that they did so in 2019 (without more) does not support an inference that her workers' compensation claim is what caused her termination. Although her absence from the job certainly would preclude any suggestion by Defendants that they had fired her for reasons related to job performance, it does little to support an inference that her termination was due to her IWCC claim.

In addition, Emerson maintains that the pendency of her workers' compensation claim on the day of her termination also bolsters her causation argument. She is correct that the pendency of a workers' compensation case may support a retaliation claim under the IWCA where the circumstances suggest continued pursuit of the claim motivated the employee's discharge. *See, e.g.*, *Baptist v. Ford Motor Co.*, 827 F.3d 599, 602 (7th Cir. 2016). But we agree with the district court that the mere pendency of Emerson's case is not dispositive here absent other facts from which we can infer causation, particularly given the span of time between the commencement of

the IWCC claim and her termination. Indeed, employers may fire employees while their workers' compensation claims are pending so long as it is not in retaliation for having filed the claim. *Matros v. Commonwealth Edison Co.*, 136 N.E.3d 83, 107 (Ill. App. Ct. 2019) (stating that to defeat causation in a workers' compensation retaliation case, "[a]ny reason for discharge, even if illegal, other than the allegedly retaliatory reason will suffice"). And nothing in her complaint indicates otherwise.

We start and end with the Supreme Court's instructions in *Twombly*. Because Emerson has not "nudged [her] claims across the line from conceivable to plausible," she has not stated a claim for relief. *Twombly*, 550 U.S. at 570. We therefore affirm the district court's dismissal of Emerson's amended complaint.

## B.  Rule 59(e) Motion for Predismissal Discovery

Emerson also argues that the district court should have allowed her an opportunity to conduct limited discovery to determine which decisionmakers at the Sheriff's Office had knowledge of her workers' compensation claim before dismissing her claim. We review the district court's denial of Emerson's discovery request for abuse of discretion. *McCauley v. City of Chicago*, 671 F.3d 611, 619 (7th Cir. 2011) (citing *Griffin v. Foley*, 542 F.3d 209, 223 (7th Cir. 2008)).

In denying Emerson's discovery request, the district court reasoned that her complaint failed to give any indication as to who at the Sheriff's Office might have knowledge of her workers' compensation claim. Emerson's desire to obtain more information to support her feelings of mistreatment is understandable, but as we have said, "a district court does not abuse

its discretion in denying additional discovery where the request was based on nothing more than mere speculation and would amount to a fishing expedition." *Helping Hand Caregivers, Ltd. v. Darden Rests., Inc.*, 900 F.3d 884, 890 (7th Cir. 2018) (internal quotations omitted).

## C.  Rule 59(e) Motion for Reconsideration

One issue remains. Emerson argues that the district court erred in not granting her Rule 59(e) motion for reconsideration. We review the district court's denial of the motion for abuse of discretion only. *Vesey v. Envoy Air, Inc.*, 999 F.3d 456, 463 (7th Cir. 2021).

"Altering or amending a judgment under Rule 59(e) is permissible when there is newly discovered evidence or there has been a manifest error of law or fact." *Harrington v. City of Chicago*, 433 F.3d 542, 546 (7th Cir. 2006). Emerson offered neither of these things in her Rule 59(e) motion—instead, she recited the same arguments she made in her previous briefing to the district court. This is not the "exceptional case" warranting relief under Rule 59(e). *Gonzalez-Koeneke v. West*, 791 F.3d 801, 807 (7th Cir. 2015) (quoting *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008)). The district court therefore did not abuse its discretion in denying Emerson's Rule 59(e) motion for reconsideration.

## IV.  Conclusion

For the foregoing reasons, the judgment of the district court is AFFIRMED.